[Cite as *State v. Dykes*, 2013-Ohio-872.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-L-021** |
| OKEMA K. DYKES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 11 CR 000412.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Alana A. Rezaee*, Assistant Prosecutor, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*R. Paul LaPlante*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Okema K. Dykes, appeals the judgment of conviction, after a jury trial, on one count of aggravated robbery and one count of robbery; he was found guilty under a theory of complicity. Appellant argues the verdict is against the manifest weight of the evidence. For the following reasons, we affirm.

{¶2} There was testimony presented at trial that, if believed by the jury, established the following: On the morning of July 19, 2011, appellant and an accomplice robbed Daniel Adkins, an employee of Painesville Recycling, as he was leaving the parking lot of Key Bank with two bags of cash for his employer. At the end of June or beginning of July 2011, appellant had approached his friend Tyrell Hurd about planning this robbery; he stated that he had a plan to rob "the recycling guy" and indicated that he had been watching Mr. Adkins in order to learn his schedule and movements. Mr. Hurd agreed to the plan and accompanied appellant during the second week of July on an observation mission. They observed Mr. Adkins leave the recycling facility and proceed to Key Bank in Painesville. From the parking lot, appellant and Mr. Hurd watched as Mr. Adkins exited the bank and returned to his car with two bags of what they presumed to be cash.

{¶3} There was further testimony that appellant and Mr. Hurd agreed to execute their plan on July 19, 2011, and that Mr. Hurd would take the money from Mr. Adkins, while appellant would drive. They expected a take of between $30,000 and $40,000 and intended to split the money evenly.

{¶4} Appellant and Mr. Hurd began communicating via text message early on the morning of July 19, 2011. Mr. Hurd picked up appellant around 9:00 a.m. in his girlfriend's silver Jeep. Mr. Hurd slid over to the passenger side, and appellant took the wheel. They went to a house on Jefferson Street in Painesville, where appellant retrieved a silver handgun; Mr. Hurd placed the handgun in his waistband. They proceeded to the car wash across the street from Painesville Recycling and waited for

2

Mr. Adkins to leave for the bank. When they saw Mr. Adkins depart from the recycling center, they followed him to Key Bank and parked in a lot close to the bank.

{¶5} The state's evidence indicated appellant positioned the car backwards in the parking spot in order to make a quick get-away; Mr. Hurd hid behind a dumpster near the bank and waited for Mr. Adkins to emerge. Mr. Adkins eventually exited the bank with two brown bags and got in his car, placing the bags on the front passenger seat of his vehicle. Mr. Hurd then approached the vehicle and reached through the open passenger window for the bags of cash. Mr. Adkins attempted to fight off Mr. Hurd and a struggle ensued. At some point during the struggle, Mr. Adkins saw the silver handgun in Mr. Hurd's hand; Mr. Hurd told Mr. Adkins to let go of the money. Despite Mr. Adkins' best efforts, Mr. Hurd was able to wrest one of the bags of cash from the car.

{¶6} Mr. Hurd ran through the parking lot and jumped in the waiting Jeep. Appellant and Mr. Hurd then fled the scene. As they were driving, appellant and Mr. Hurd noticed a Fairport Harbor Police officer and became concerned he was watching them. Appellant pulled into the parking lot of Harbor Bait and Tackle, exited the Jeep, and went into the store. Mr. Hurd followed him into the shop, but minutes later, he left in the Jeep and returned to his girlfriend's house, leaving appellant in the store.

{¶7} Mr. Adkins, meanwhile, had returned to Key Bank to report the robbery. He indicated he had been robbed by a young African-American male wearing a blue hooded sweatshirt. Radio traffic as a result of Mr. Adkins' report was substantial in the minutes following the robbery. Officer Crowley of the Painesville Police Department responded to Harbor Bait and Tackle, after a radio report indicated that the Fairport

Harbor officer had, in fact, observed appellant and Mr. Hurd and had followed them to the shop's parking lot. Officer Crowley observed appellant and Mr. Hurd inside Harbor Bait and Tackle and focused his attention on appellant, because appellant was wearing a blue top that matched Mr. Adkins' description of the man who had robbed him. Mr. Hurd had apparently taken off his blue sweatshirt, and was wearing a gray tank top when he exited the store and left in the silver Jeep.

{¶8} Officer Crowley approached appellant as he exited the store, stated that he matched the description of an individual just reported to have been involved in a crime, and then searched appellant. Officer Crowley did not find any weapons on appellant's body. Appellant proceeded to tell Officer Crowley that he did not know the man in the silver Jeep, and that after meeting him at an apartment complex, he had merely been assisting him in finding the freeway on-ramp. Appellant was detained pending investigation.

{¶9} Officer Ticel of the Painesville Police Department arrived on scene shortly thereafter. He learned that one suspect had left the scene and that appellant was detained in the back of the Fairport Harbor cruiser. He spoke to appellant, who initially stated there was nothing to talk about, but then provided the same story he had told Officer Crowley. Officer Ticel thought the story was "highly improbable" and had appellant placed in the back of his cruiser pending further investigation.

{¶10} The investigation led other officers to locate Mr. Hurd and the silver Jeep at his girlfriend's apartment. The officers arrested Mr. Hurd and located the clothing he was wearing during the robbery, the bag of money, and the silver handgun on the passenger seat of his girlfriend's other vehicle. Officer Tuttle and Detective Levicky of

4

the Painesville Police Department secured the evidence and dusted the silver Jeep for fingerprints. Testing by the Lake County Crime Laboratory confirmed that appellant's fingerprints matched those found on the inside driver's side door of the silver Jeep and that the firearm was operable at the time of the robbery.

{¶11} Appellant was taken to the Painesville Police station, where he subsequently changed his version of the events during questioning. Initially, appellant had told Officer Ticel that he did not know Mr. Hurd, but that he had agreed to drive him to the freeway entrance. Appellant then changed his story, stating that he had met Mr. Hurd at a party a week earlier and then had seen him again that morning. He stated that he knew Mr. Hurd as "Little Daddy" and agreed to drive him to go meet a girl. He told the police that "Little Daddy" asked him to stop in a parking lot and told appellant that he would be right back, while appellant waited in the car. He observed "Little Daddy" running back to the car and claimed that he tried to get out and leave, but was told to go. Appellant then did as he was told and drove away, but decided to pull into the Harbor Bait and Tackle parking lot because he felt something was not right. Appellant continuously denied having any knowledge of the robbery.

{¶12} As the investigation continued, appellant eventually admitted to police that he did, in fact, know Mr. Hurd and that they had daily contact over the three-year period prior to the robbery. Appellant was arrested, and two cell phones were collected from him. Testing done by the Lake County Crime Lab confirmed that Mr. Hurd and appellant had utilized the two phones to communicate prior to and on the day of the robbery.

{¶13} Appellant was indicted September 16, 2011, on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony; one count of robbery in violation of R.C. 2911.02(A)(1), a second-degree felony; and two counts of having a weapon while under a disability in violation of R.C. 2923.13(A)(2) and (A)(3), third-degree felonies. Both robbery charges also carried two firearm specifications and a repeat violent offender specification.

{¶14} The case proceeded to a jury trial in January 2012. Mr. Hurd testified on behalf of the state and admitted on the stand to participating in the robbery with appellant. He indicated that the initial idea was appellant's, but that together they observed Mr. Adkins, agreed on a plan of action and date for the robbery, and conducted the robbery together, with appellant driving and Mr. Hurd actually taking the money. Mr. Hurd testified that appellant had provided him with the silver handgun used in the robbery. Appellant did not take the stand, nor did he put on any defense witnesses or evidence.

{¶15} A jury found appellant guilty of the aggravated robbery and robbery counts, via a theory of complicity. He was found not guilty of both having a weapon under a disability counts and the firearm specifications. The trial court merged the two robbery counts and sentenced appellant to ten years in prison. The court further found appellant to be a repeat violent offender and sentenced him to an additional seven years, for a total prison sentence of 17 years.

{¶16} Appellant timely appealed and now brings the following assignment of error:

{¶17} "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶18} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

{¶19} Appellant's argument that his conviction is against the manifest weight of the evidence rests on the circumstantial nature of the evidence against him and what he alleges is Mr. Hurd's lack of credibility. He suggests that the state relied solely on Mr. Hurd's testimony in achieving a conviction against appellant under a theory of complicity, and that, as a result, the jury lost its way. A review of the trial testimony and exhibits reveals, however, that this is not the case. Although the state relied heavily on Mr. Hurd's testimony, plenty of additional evidence was presented to the jury to support appellant's conviction.

{¶20} Initially, it must be recognized that circumstantial evidence possesses the same probative value as direct evidence. *State v. Hendrix*, 11th Dist. No. 2011-L-043, 2012-Ohio-2832, ¶137, citing *State v. Jenks*, 61 Ohio St.3d 259, 272 (1991). "Circumstantial evidence has been defined as testimony not grounded on actual

7

personal knowledge or observation of the facts in controversy, but of other facts from which inferences are drawn, showing indirectly the facts sought to be established." *State v. Windle*, 11th Dist. No. 2010-L-033, 2011-Ohio-4171, ¶34, citing *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988). Proof beyond a reasonable doubt may therefore be established by circumstantial evidence. *Hendrix*, *supra*, ¶137. Furthermore, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986).

{¶21} A review of the record reveals that a variety of evidence was presented for the jury's consideration, and the determination as to weight and credibility of that evidence was exclusively within the jury's purview. The state presented testimonial evidence from 12 witnesses, including law enforcement personnel, evidence technicians, the victim Mr. Adkins, and Mr. Hurd. Between testimony from Detective DeCaro of the Painesville Police that he had observed appellant watching the recycling center from across the street the day before the robbery, Mr. Hurd's testimony regarding appellant's planning of and involvement in the crime, and officer descriptions of appellant's own bizarre explanations during police questioning about what had occurred that day, the jury was provided with a clear picture of the events.

{¶22} In addition, over 13 pieces of physical evidence were admitted into the record to support the witness testimony. That evidence included appellant's versions of the events as relayed during his video-taped interviews with police, text messages between appellant and Mr. Hurd that unequivocally demonstrated appellant's involvement in the planning and execution of the robbery, and appellant's fingerprints

8

lifted from the inside of the vehicle used to flee the scene of the crime. It is particularly noteworthy that while appellant's version of the events given to the police changed repeatedly, it always conflicted with both Mr. Hurd's testimony and the physical evidence collected.

{¶23} The state submitted substantial evidence to the jury in support of appellant's conviction, and a review of that evidence reveals that the state clearly met its burden of persuasion. This court cannot say that the jury clearly lost its way in coming to its final conclusion regarding appellant's guilt.

{¶24} The assignment of error is without merit, and the decision of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.