[Cite as *Cleveland v. Vega*, 2011-Ohio-2250.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 94070

---

## CITY OF CLEVELAND

### PLAINTIFF-APPELLEE

vs.

## RICHARD VEGA

### DEFENDANT-APPELLANT

---

### JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cleveland Municipal Court
Case No. 2008CRB039868

**BEFORE:** Cooney, J., Boyle, P.J., and Rocco, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

**ATTORNEY FOR APPELLANT**

John J. Sheehan
Suite 1648 Hanna Building
1422 Euclid Ave.
Cleveland, Ohio 44115-2001

**ATTORNEYS FOR APPELLEE**

Robert J. Triozzi
Director of Law
City of Cleveland

By: Victor R. Perez
Chief City Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

**{¶ 1}** Defendant-appellant, Richard Vega ("Vega"), appeals his assault conviction. Finding no merit to the appeal, we affirm.

**{¶ 2}** In December 2008, Vega was charged with assault, a violation of Cleveland Codified Ordinances ("CCO") 621.03, a first degree misdemeanor. Vega's codefendant, Patrick O'Malley ("O'Malley"), was also charged with assault. The two cases were consolidated for a jury trial at which the following evidence was adduced:

**{¶ 3}** On July 21, 2008, Raymond Hulec ("Hulec") engaged in an argument with two employees at a gas station near his home. He was subsequently arrested for impersonating a police officer. Hulec was taken to the Cleveland city jail where he claimed two corrections officers — Vega and O'Malley — assaulted him.

**{¶ 4}** Hulec testified regarding seven separate incidents of assault, including being slapped, pushed, punched, kicked, kneed, and verbally abused by Vega and O'Malley. Hulec told the jail's nurse, Jill Loretitsch ("Loretitsch"), about the abuse during one of his visits to receive medications. Her records indicate that she made note of Hulec's being hit in the face with a newspaper by Vega. This incident was the only incident of assault captured on the jail's surveillance camera and was admitted into evidence at trial.

**{¶ 5}** Although Hulec claimed that most of the abuse occurred in front of other inmates, none of the inmates in custody at the time of Hulec's stay in the jail were available to testify at trial, nor did they offer written statements. Neither Vega nor O'Malley testified at trial. Tony Sanchez, a maintenance worker, and Officer Dave Stonko, another corrections officer, testified that they did not witness any abuse to Hulec by Vega or O'Malley. Other officers at the jail during Hulec's stay provided reports for the investigating detective in which they denied any knowledge of incidents involving Hulec on the day in question.

**{¶ 6}** Photos of Hulec's injuries and his medical records were admitted into evidence, as well as his written statements regarding the incidents.

**{¶ 7}** Vega was found guilty and sentenced to a $1,000 fine and 180 days in jail, with $500 of the fine and 170 days of the jail time suspended. O'Malley was also found guilty and received the same sentence.

**{¶ 8}** Vega now appeals, raising three assignments of error.

Prejudiced Jury

**{¶ 9}** In his first assignment of error, Vega argues that the trial court erred in allowing a prejudiced jury to decide this matter. Vega argues that the jurors were intimidated by two men who sat on the side of the courtroom where the defendants' family and friends sat, creating a bias and prejudicing the jurors.

**{¶ 10}** We begin by noting that defense counsel failed to object to the court's decision to proceed with the trial despite the alleged intimidation and has, therefore, waived all but plain error. "Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Plain error exists when it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225; *State v. Watson* (1991), 61 Ohio St.3d 1, 572 N.E.2d 97; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894. We invoke the plain error rule only if we find that the circumstances in the instant case are exceptional, and

that reversal of the judgment is necessary to prevent a manifest miscarriage of justice. *State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710.

{¶ 11} Prior to the last day of testimony, it was brought to the court's attention that some of the jurors observed two men staring at them during the trial. It was unclear whether the jurors felt that they had been harassed or intimidated by these two men. In response to this information, the court conducted an in camera interview of each juror separately.

{¶ 12} The record shows that the trial court thoroughly examined each juror in great detail about the alleged intimidation and the potential effect it had on them. Both defense counsel and the prosecutor participated in questioning the jurors as well. The jurors were asked whether the incident had altered their ability to be fair and impartial toward the defendant. Each juror responded that they were confident that they could continue to act as jurors in a fair and impartial manner. A juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court. *State v. Phillips* (1995), 74 Ohio St.3d 72, 89, 656 N.E.2d 643. At the conclusion of all of the interviews, the court, the prosecutor, and defense counsel were confident that the alleged intimidation had not risen to a level of misconduct and that all of the jurors could continue.

{¶ 13} Moreover, despite the allegations made in Vega's brief regarding juror misconduct, there is no evidence in the record of such misconduct or any bias by the jury.

{¶ 14} The record clearly reflects that the court concluded that the alleged intimidation did not adversely affect the substantial rights of the accused and, therefore, a fair trial was still possible.   Thus, we find no plain error in the court's proceeding with the jury trial.

{¶ 15} Accordingly, the first assignment of error is overruled.

<u>Ineffective Assistance of Counsel</u>

{¶ 16} In his second assignment of error, Vega contends that he received ineffective assistance of counsel.

{¶ 17} To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 18} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; *Strickland* at 686.   In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, had a fair trial and substantial justice was

done." *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus.

{¶ 19} This court must presume that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. *Strickland* at 689. Courts must generally refrain from second-guessing trial counsel's strategy, even where that strategy is questionable, and appellate counsel claims that a different strategy would have been more effective. *State v. Jalowiec*, 91 Ohio St.3d 220, 237, 2001-Ohio-26, 744 N.E.2d 163.

{¶ 20} Vega's first claim of ineffective assistance of counsel pertains to defense counsel's alleged failure to request a mistrial after it was discovered that two men had been staring at the jurors during the trial.

{¶ 21} A mistrial should not be ordered in a criminal case merely because some error or irregularity has occurred, unless the substantial rights of the accused or the prosecution are adversely affected, and this determination is made at the discretion of the trial court. *State v. Reynolds* (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490. The granting of a mistrial is only necessary when a fair trial is no longer possible. *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463, 93 S.Ct. 1066, 35 L.Ed.2d 425.

{¶ 22} Having determined in the first assignment of error that the trial court properly addressed the alleged intimidation and concluded that it did not adversely affect the substantial rights of the accused, it follows that defense counsel was not ineffective for failing to request a mistrial.

{¶ 23} Vega also argues that he was denied effective counsel because his attorney failed to disclose a log book during discovery and because his attorney "had multiple arguments with the court." Vega fails, however, to make any argument as to how these "arguments" prejudiced him and fails to cite any case law to support his claim. Therefore, he has not shown that but for counsel's conduct, the outcome of his trial would have been different.

{¶ 24} We find that Vega has not established ineffective assistance of counsel. The record does not indicate that defense counsel failed in his essential duties or that his performance fell below an objective standard of reasonableness.

{¶ 25} Accordingly, the second assignment of error is overruled.

Manifest Weight of the Evidence

{¶ 26} In his third assignment of error, Vega argues his conviction is against the manifest weight of the evidence. We disagree.

{¶ 27} A challenge to the manifest weight of the evidence attacks the verdict in light of the State's burden of proof beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d

380, 386-387, 1997-Ohio-52, 678 N.E.2d 541. When inquiring into the manifest weight of the evidence, the reviewing court sits as the "thirteenth juror and makes an independent review of the record." Id. at 387; *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652. The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of all witnesses, and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new proceeding ordered. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 28} The Ohio Supreme Court has explained that when reviewing challenges to the manifest weight of the evidence, a court of appeals must be guided by the presumption that the findings of the trier of fact were indeed correct. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 79-80, 461 N.E.2d 1273. The underlying rationale for giving deference to the trial court's findings "rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. A reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶ 29} In the instant case, Vega was convicted of assault under CCO 621.03, which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another."

{¶ 30} Vega argues that the jury clearly lost its way due to the lack of corroborating evidence to support Hulec's claims. Vega points to the testimony and statements that support his claim that no assault occurred. In addition to the lack of corroborating evidence, Vega argues that Hulec was not a credible witness because he is a convicted criminal who takes "anti-depressive drugs and bi-polar type medication." Vega also cites Hulec's statement to police that he was assaulted by the gas station attendants.

{¶ 31} When assessing witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan* (1986), 22 Ohio St.3d 120, 123, 489 N.E.2d 277. Moreover, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs* (1996), 111 Ohio App.3d 405, 412, 676 N.E.2d 547. The court below is in a much better position than an appellate court "to view the witnesses, to observe their demeanor, gestures and voice inflections, and to weigh their credibility." *Briggs*, citing *Seasons Coal Co.* at 80.

{¶ 32} The surveillance video from the gas station clearly shows that Hulec was not assaulted by the gas station attendants. The photo taken of Hulec by the Central Processing

Unit prior to his release from jail clearly shows visible injuries to his face. The record of Hulec's arrival at the jail indicates that he entered with no visible injuries. The record of his first visit to the nurse also does not indicate that she observed any visible injuries. However, the record of his second visit to the nurse contains a note that she noticed ecchymotic of his eyes, meaning bruising consistent with a "black eye," and a bruised upper right arm. Moreover, the jail's surveillance camera captured the incident where Vega struck Hulec with a newspaper.

{¶ 33} This evidence supports the prosecution's theory that Hulec sustained injuries to his face some time during his incarceration at the City jail. The jury clearly found Hulec's testimony regarding the ways in which he sustained these injuries to be credible. Based on the evidence before the jury, we cannot say that the conviction is against the manifest weight of the evidence. Nor can we say that the jury lost its way and created a manifest injustice in convicting Vega.

{¶ 34} Accordingly, the third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

    A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

MARY J. BOYLE, P.J., and
KENNETH A. ROCCO, J., CONCUR