[Cite as *State v. Williams*, 2014-Ohio-1778.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-T-0070** |
| RICHARD ASHLEY WILLIAMS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2011 CR 0657.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W. Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This appeal is from the sentencing judgment in a criminal case before the Trumbull County Court of Common Pleas. After a two-day jury trial, appellant, Richard Ashley Williams, was found guilty of felonious assault, a second-degree felony under R.C. 2903.11(A)(1). Before this court, he contends that his conviction must be reversed because the verdict was against the manifest weight of the evidence. For the following reasons, we conclude that the record supports the finding of guilty.

{¶2} On the evening of October 8, 2011, appellant was involved in a physical

altercation with Sheila Brakeman ("Brakeman"). The incident occurred in the front yard of appellant's home on Columbia Street in Masury, Trumbull County, Ohio. Brakeman lived with her husband in a residence near the corner of Columbia Street and Stateline Road, which is essentially catty-cornered to the home appellant shared with his mother. In addition, Brakeman's adult daughter, Krystal Burnett ("Burnett"), lived in a third home within the same neighborhood.

{¶3} Although Brakeman had not always resided so close to appellant and his mother, she had known appellant for the vast majority of his life. In fact, Brakeman and appellant were distantly related. Moreover, Burnett and appellant had been friends for a number of years, beginning when they were both teenagers.

{¶4} On the date in question, appellant drank a number of beers throughout the afternoon and took two Vicodin pills. After visiting at a friend's home the majority of the day, he returned to his residence in the early evening, and his mother offered to prepare his dinner. While appellant initially accepted her offer, he vehemently rejected the food when she tried to serve it. This led to a heated argument between them, which ended when appellant grabbed two duffel bags and left the residence.

{¶5} Appellant walked to Burnett's home. Upon letting him in, Burnett noticed that he was upset and had been crying. She also noticed that his speech was slurred, and that he appeared to be intoxicated. After sitting down, appellant looked through the contents of the duffel bags, stating that he wanted to find his laptop computer. When he could not locate the item in either bag, he became even more upset. Ultimately, Burnett agreed to walk with him back to his mother's residence.

{¶6} Appellant's mother was decorating the front yard for Halloween when they arrived. Instead of following appellant into the yard, Burnett walked to the other side of

2

the street and watched from her mother's, i.e., Brakeman's, driveway. When appellant asked his mother about the location of his laptop, a heated argument again ensued. At least twice during this episode, he went into the home to search for the laptop, but then quickly returned to the front yard when he could not find it. As the situation progressed, appellant continued to scream at his mother, using vulgar and obscene language.

{¶7} Appellant's voice was so loud that, besides Burnett, Lisa and Phillip Pickard, as well as Brakeman, could hear him in their nearby homes. The Pickards' residence is located to the southeast of appellant's home and directly south of Brakeman's home. After hearing appellant's voice as they were preparing for bed, they were able to stand by a second-story window of their residence and look into appellant's yard. As a result, they were able to both see and hear many of the events as they transpired.

{¶8} Brakeman, who was already in bed, also heard appellant. Upon recognizing appellant's voice, Brakeman put on her robe and walked across the street into appellant's yard. After placing herself between appellant and his mother, she began to chastise him for talking to his mother in a disrespectful manner. In response, appellant yelled directly at Brakeman. As a result, appellant's mother went into her home and called the police.

{¶9} A physical altercation between appellant and Brakeman then ensued. At the conclusion of the incident, Brakeman fell and broke one of her wrists. The injury was so severe that she had to undergo an operation, in which three bars were placed in her wrist and arm. In addition to needing to wear a steel apparatus to stabilize the wrist for a lengthy period, Brakeman underwent approximately 16 months of physical therapy in order to regain partial use of the wrist.

{¶10} After seeing her mother fall, Burnett ran into the Brakeman residence and informed Brakeman's husband of the incident. Upon running into appellant's yard, the husband was able to subdue appellant and pin him to the ground. After hearing the siren of an approaching police cruiser, though, the husband allowed appellant to get up, giving him an opportunity to flee the scene. Appellant ran to the residence of another friend in the neighborhood, where he stayed for approximately one hour before returning to the scene on his own accord. Based upon the investigation conducted by the responding officer during that one-hour period, appellant was immediately placed under arrest for assaulting Brakeman.

{¶11} After preliminary proceedings in a county district court, appellant's case was transferred to the court of common pleas, and he was indicted on the single count of felonious assault. Following numerous delays caused by the periodic appointment of new trial counsel for appellant, a two-day jury trial was held in March 2013.

{¶12} As to the actual physical altercation between appellant and Brakeman, the state relied upon the testimony of Phillip Pickard, Lisa Pickard, Burnett, and Brakeman. As part of their respective testimonies, each of these witnesses stated that the following events occurred: (1) after the initial exchange of words, appellant began walking toward Brakeman, swinging or "flailing" his arms in her direction; (2) as appellant came at her, Brakeman started to backpedal through the yard toward the roadway; (3) as Brakeman neared the street, she stumbled due to appellant's movements toward her; and (4) as she was stumbling, appellant reached out and pushed her down. These witnesses also generally agreed that Brakeman did not hit or touch appellant prior to her fall, and that she did not kick appellant while he was pinned to the ground by her husband.

{¶13} Each of these four witnesses testified as to points that were not addressed

4

by the other three. For example, Phillip Pickard stated that when appellant's mother left the yard and went into the home, Brakeman tried to follow her, but appellant physically stopped her and pushed her back slightly. Moreover, the four witnesses did disagree on where Brakeman's fall happened. According to Brakeman and Burnett, the push and accompanying fall occurred on the roadway. In contrast, Phillip Pickard expressly said that Brakeman was still in appellant's yard when she fell. In her testimony, Lisa Pickard only stated that Brakeman hit the "ground" as a result of appellant's push.

{¶14} In testifying on his own behalf, appellant essentially asserted that he only touched Brakeman to defend himself during their altercation. According to him, while he and Brakeman were arguing face-to-face, she grabbed him by both arms just below his shoulders and was able to lift him up into the air momentarily. He then pushed forward against Brakeman, causing her to lose her grip on his arms and fall unto the grass after she lost her balance. Appellant further testified that, as Brakeman was getting up from the initial fall, he tried to retreat, but she grabbed one of his arms with both hands and used her weight to pull on him. When he was able to yank his arm away from her grip, she again fell backwards and landed on her wrist.

{¶15} Upon weighing the foregoing evidence, the jury found appellant guilty of felonious assault. After holding a separate sentencing hearing, the trial court imposed a six-year prison term for the sole offense. In support of its decision, the court found that appellant had previously served a prison term, had a significant prior record, had shown no remorse for the felonious assault, and had inflicted a serious injury upon the victim.

{¶16} In appealing his conviction, appellant asserts one assignment of error for review:

{¶17} "The appellant's conviction for felonious assault is against the manifest

5

weight of the evidence."

{¶18} In claiming that the jury lost its way in rendering a guilty verdict, appellant contends that the jury should have found his version of the physical altercation to be the most credible. He maintains that his testimony was more believable than Brakeman's version because his description of the altercation was corroborated by an "independent" witness, i.e., Phillip Pickard. Based upon this, appellant states that the jury should have found that Brakeman caused her own injury because he was merely trying to extricate himself from her grip when she fell.

{¶19} In asserting that Phillip Pickard's testimony was consistent with his version of the pertinent events, appellant emphasizes that Phillip expressly testified that the sole fall he saw involving Brakeman occurred inside the yard of appellant's home. As stated above, Phillip's testimony as to the location of this fall was inconsistent with Brakeman's version, who testified that her sole fall took place in the roadway. Appellant also notes that, as part of his cross-examination, Phillip admitted that he did not witness the entire altercation because he stepped away from the hallway window to call the police. In light of all this, appellant argues that Phillip only saw the first of the two falls which appellant described in his testimony.

{¶20} Under appellant's version of the altercation, Brakeman did not sustain any injury the first time she fell, and immediately got back up and again grabbed one of his arms. Hence, appellant's characterization of Phillip's testimony would only be correct if Brakeman was not injured in the fall described by Phillip. However, Phillip specifically testified that, as soon as Brakeman hit the ground in the sole fall he saw, she began to scream for her husband and said that she was hurt. To this extent, the record does not support appellant's contention that he and Phillip were describing the same fall taken by

6

Brakeman.

{¶21} More importantly, Phillip's description of the cause of the fall directly conflicted with appellant's version. According to appellant, Brakeman fell both times as a result of his defensive moves in response to her aggressive actions in trying to grab his arms. In contrast, Phillip testified that the sole fall was caused by appellant's aggressive behavior against Brakeman:

{¶22} "And [Brakeman] backed up, and the more [she] backed up the more [appellant] went at her to the point where he was swinging at her. [Brakeman] was trying to block off the swings, and as fast as she could backpedal, he was coming at her that fast until they got to the edge of this rocky hill and he pushed her over the hill and she went down."

{¶23} Given the obvious differences between the two versions of the altercation, Phillip's testimony was not consistent with, and did not bolster, appellant's testimony in any significant respect. Instead, Phillip's version of the event was generally consistent with the testimony of Lisa Pickard, Krystal Burnett, and Brakeman herself. Under that version, Brakeman did not instigate any of the physical contact between her and appellant. Rather, he walked after her in such a manner as to cause her to slip as she backpedaled, and then accentuated the fall by pushing her downward as she was slipping. Additionally, each of these witnesses only described one fall, as compared to two falls in appellant's version of the incident.

{¶24} As previously mentioned, Phillip's testimony conflicted with Brakeman's and Burnett's version on one prominent point: the location of Brakeman's fall. However, given that the offense of felonious assault under R.C. 2903.11(A)(1) only requires proof that the accused knowingly caused serious "physical harm" to another person, the issue

7

of whether Brakeman fell in the yard or in the roadway was not pertinent to an element of the charged crime. Consequently, the verdict is supported by competent, credible evidence.

{¶25} As part of a "manifest weight" analysis on appeal, an appellate court must generally review the credibility of all witnesses at trial. *State v. Watson*, 11th Dist. No. Trumbull 2011-T-0053, 2012-Ohio-5929, ¶29. Nevertheless, issues as to the credibility of a witness are primarily for the trier of fact to determine; hence, a degree of deference must be given to the jury's findings on this point. *State v. Jaskiewicz*, 11th Dist Trumbull No. 2012-T-0051, 2013-Ohio-4552, ¶18-19.

{¶26} "When assessing witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.' *State v. Awan* (1986), 22 Ohio St.3d 120, 123, * * *. Moreover, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs* (1996), 111 Ohio App.3d 405, 412, * * *. The [factfinder] below is in a better position than an appellate court 'to view the witnesses, to observe their demeanor, gestures and voice inflections, and to weigh their credibility.' *Briggs*, citing [*Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80]." *Cleveland v. Vega*, 8th Dist. Cuyahoga No. 94070, 2011-Ohio-2250, ¶31.

{¶27} Notwithstanding the conflicting assertions regarding where Brakeman fell, the testimony of each of the state's four primary witnesses did not contain any internal inconsistencies that would render their respective versions of the altercation incredible. Furthermore, as to the cause of Brakeman's fall and the nature of appellant's behavior during the altercation, the descriptions/statements of the four witnesses were consistent

with each other. Finally, although Phillip and Lisa Pickard became friends with Brakeman after the evening of the altercation, the record does not reveal the existence of any inherent bias that would render all four witnesses unbelievable. Thus, regardless of whether the jury believed all four primary witnesses or just one, the jury did not abuse its discretion in finding the state's evidence as to the nature of the altercation to be more credible than appellant's version.

{¶28} "For an appellate court to overturn a conviction as being against the manifest weight of the evidence, it must be found that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" [*State v. Thompkins*, (1997), 78 Ohio St.3d 380, 387], quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175 * * *." *State v. Kovacic*, 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶37.

{¶29} In this case, the testimony of the state's four primary witnesses constituted substantial evidence which, if believed, supported the finding that appellant knowingly caused serious physical harm to the victim, Sheila Brakeman. Accordingly, the jury did not lose its way in finding him guilty of felonious assault.

{¶30} Appellant's sole assignment is without merit. The judgment of the Trumbull County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

DIANE V. GRENDELL, J.,

concur.

9