[Cite as *State v. Jaskiewicz*, 2013-Ohio-4552.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**TRUMBULL COUNTY, OHIO**

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** | |
| Plaintiff-Appellee, | : | | |
| - vs - | : | CASE NO. 2012-T-0051 | |
| JEFFERY ALLEN JASKIEWICZ, | : | | |
| Defendant-Appellant. | : | | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 11 CR 511.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 South Water Street, Suite C., Kent, OH 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant, Jeffery A. Jaskiewicz, appeals his conviction on one count of domestic violence in violation of R.C. 2911.25(A) and (D)(1) & (4). Following a jury trial, appellant was found guilty and sentenced to 30 months incarceration. The jury also found that appellant had two prior convictions for domestic violence, elevating his current offense to a third degree felony.

{¶2} The events giving rise to this appeal took place at approximately 11:00 a.m. on August 15, 2011, at the home of appellant and the victim, his wife at the time, Andrea Jaskiewicz. They resided at 3438 Elmwood Ave., Howland Township, Trumbull County Ohio. At that time, appellant and Andrea had been married approximately three years, and had two children, Chaz, age 7, and Lindsey, age 4. Andrea also had a child, Alexandria (aka "Alexis"), age 14, from a previous relationship.

{¶3} Appellant and Andrea began to argue over the whereabouts of appellant's debit card, given to Andrea the day before to purchase items from Wal-Mart. The card accessed the account in which appellant's regular paycheck was deposited, and he often gave it to Andrea for family expenditures. Because appellant could not find the card, he accused Andrea of stealing it. Andrea insisted she did not have it, and at appellant's request, Andrea permitted him to peruse through her purse in an effort to find it. During the process of going through her purse, appellant proceeded to call Andrea vile names, "hip-checked" her, and grew increasingly angry. In response, Andrea "hip-checked" appellant. Thereafter, appellant put Andrea in a chokehold over the kitchen counter. Andrea then attempted to use her legs to free herself from appellant's grip. Although appellant contends that Andrea kicked him in the testicles "field goal" style, Andrea could not recall whether she did that, only that she attempted to lift her leg in an attempt to retaliate.

{¶4} After eventually freeing herself, Andrea ran to the bathroom and used her cell phone to call the police. Appellant simultaneously used the home phone to call the police. Three Howland Township police officers responded to the scene. Patrolman Jeff Spatar encountered appellant on the front porch and reported that appellant did not appear injured or require medical attention, even though he claimed that Andrea kicked

2

him in the groin. Patrolman Spatar noticed that Andrea had red marks around her neck. She was also hysterical, requiring at least 45 minutes to calm down. Appellant contends the red marks were self-inflicted when Andrea was in the bathroom calling the police, and that he did not choke her.

{¶5} Unbeknownst to Andrea and appellant, Alexis, after having been awakened by the yelling, observed a portion of the altercation from the hallway. Alexis witnessed appellant choking Andrea and holding her down, and heard Andrea repeatedly asking appellant to "stop." Alexis also testified that appellant regularly called Andrea names like "bitch" and "whore" and that he did so during the altercation. Alexis further testified that she then retreated back to her bedroom with her younger sibling, Lindsey, in order to shield Lindsey from what was happening, and that they remained there for several hours until their mother stopped crying.

{¶6} Appellant appeals his conviction assigning the following as error:

{¶7} "[1.] The trial court erred, abused its discretion and prejudiced the appellant by overruling the appellant's objection to the admission of State's Exhibit 4.

{¶8} "[2.] The appellant's conviction for domestic violence is against the manifest weight of the evidence."

{¶9} In his first assignment, appellant takes issue with State's Exhibit 4, a redacted audio disk of telephone calls made by appellant during the time he was incarcerated at the Trumbull County Jail. This recording was introduced by Assistant Warden, Tracey Wix, the custodian of records for CD's of telephone calls coming from prisoners at the Trumbull County Jail to outsiders. Appellant contends the CD was not properly authenticated because Tracey Wix did not create State's Exhibit 4 herself, had never seen it prior to the day of trial. Ms. Wix testified that she ordered the recording

3

from the Sheriff's Department at the direction of the prosecutor with respect to calls placed by appellant to particular telephone numbers, and that she had listened to some, but not all, of the recording. Appellant's trial counsel objected to its introduction into evidence and submission to the jury, which objection was overruled. Appellant insists that Ms. Wix must have personal knowledge of the contents of State's Exhibit 4 prior to its introduction into evidence.

{¶10} Appellant also maintains that this authentication error amounts to reversible error. Specifically, appellant contends that the contents of the recording were unduly prejudicial because on the tape in question, in which he was speaking to his mother, his mother references a "fourth" incident in the last three years, an incident which was not presented to the jury in the form of documentary evidence to support the instant felony conviction. That fourth incident was a non-domestic violence misdemeanor offense for disorderly conduct.

{¶11} In *State v. Thompson*, 8th Dist. Cuyahoga No. 96929, 2012-Ohio-921, ¶27-29, the court stated:

{¶12} "Evid.R. 901 governs the authentication of demonstrative evidence, including recordings of telephone conversations. The threshold for admission is quite low, and the proponent of the evidence need only submit 'evidence sufficient to support a finding that the matter in question is what its proponent claims.' Evid.R. 901(A). '[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be.' *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937 * * * ¶25, citing *State v. Payton*, 4th Dist. No. 01-CA2606, [2002 Ohio App. LEXIS 496 (Jan. 25, 2002)]. A

proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence. *Id.*, citing *State v. Williams*, 64 Ohio App.2d 271, 274 * * *.

**{¶13}** "For a recorded telephone call to be admissible, the recording must be 'authentic, accurate, and trustworthy.' *Tyler* at ¶26, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762 * * *. But, because 'conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury,' the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be. *State v. Bell*, 12 Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶17, 30.

**{¶14}** "Thus. * * * to establish that the audio recording was what the state claimed it to be, namely, recordings of jailhouse conversations (* * *), the state was not required to 'prove beyond any doubt that the evidence is what it purports to be.' *State v. Moshos*, 12th Dist. No. CA2009-06-008, 2010-Ohio-735, ¶12, citing *State v. Aliff*, 4th Dist. No. 99CA8, 2000 Ohio App. LEXIS, 1676 (April 12, 2000). Instead, the state needed only demonstrate a 'reasonable likelihood' that the recording was authentic. *Bell* at ¶30, citing Evid.R. 901(B)(1). Such evidence may be supplied by, but is not limited to, the testimony of a witness with knowledge, voice identification, or by evidence that a call was made to the number assigned at the time by the telephone company to a particular person. See Evid.R. 901(B)(1), (5), and (6); *Moshos* at ¶14; *State v. Small,* 10th Dist. No. 06AP-1110, 2007-Ohio-6771, ¶38."

**{¶15}** Here, the state satisfied their burden of putting forth evidence of authentication by the equivalent of a telephone number. Ms. Wix testified that appellant was given a unique pin number that he has to use to make calls using the jail

phone. Ms. Wix's testimony identified appellant's pin number and used that pin number to make the recording. Accordingly, the recording was properly admitted.

{¶16} Appellant's first assignment of error is without merit.

{¶17} Under his second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Specifically, he points to minor inconsistencies between Andrea's 911 call and her testimony at trial. For example, at trial, Andrea insisted that appellant choked her with one hand, whereas in her prior 911 statement she used the word "hands." At trial, Andrea said she did not recall being kicked, however, her 911 statement indicated she had been kicked and pushed to the ground. Furthermore, at the time of trial, Andrea was pregnant with a child by Alexis' father, her former paramour. Thus, appellant contends that it was Andrea's intent all along to raise additional domestic violence charges against him, knowing that appellant would be facing a felony charge based on his prior convictions. Contrarily, appellant contends that his testimony was consistent with his 911 statement, thus making his version of the events more credible than Andrea's.

{¶18} "To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact 'lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' *State v. Thompkins*, 78 Ohio St.3d 380, 387 * * * (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio

St.2d 230 * * * (1967), paragraph one of the syllabus." *State v. Dykes*, 11th Dist. Lake No. 2012-L-021, 2013-Ohio-872, ¶18.

{¶19} "As a general proposition, we have consistently indicated that questions of witness credibility are primarily for the trier of fact to decide. *[State v. Johnson*, 11th Dist. No. 2009-T-0042, 2010-Ohio-1970, ¶17] citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The basis of this proposition is that the trier of fact is in a much better position to observe the body language, demeanor, and voice inflections of the witnesses. *Id.*" *State v. Meeks*, 11th Dist. Lake No. 2011-L-066, 2012-Ohio-4098, ¶37.

{¶20} Our review of the evidence, as outlined above, reveals that a variety of competent, credible evidence was adduced at trial and presented for the jury's consideration, "and the determination as to weight and credibility of that evidence was exclusively within the jury's purview." *Dykes*, at ¶21. The state presented testimonial evidence from Andrea, Alexis, the responding police officers at the scene, Robert Laird, the operations manager at the Trumbull County 911 Center, and Traci Wix, the assistant warden at the Trumbull County Sheriff's office, who recorded appellant's outgoing calls from the jail. Andrea's and Alexis' testimony were consistent with one another.

{¶21} The jury heard appellant's recorded calls to his mother in which he made comments about further harm that he wished he had inflicted on Andrea. These statements were contradictory to his own testimony in which he claimed he never lost his temper and never called Andrea names. Additionally, appellant demonstrated no outward signs of injury, although he claimed that Andrea had kicked him, thrown a water glass at him, and spit on him. Furthermore, the de minimus inconsistency

7

between Andrea's 911 call and her testimony could certainly be due to the passage of time between the incident and trial, as well as the traumatic nature of the events involved. Moreover, the difference between appellant using one "hand" or two "hands" is not relevant. The fact alone that Andrea was choked, whether it be with one hand or two, is the dispositive factor.

{¶22} The jury, as the fact finder, was free to believe all, part, or none of the testimony of each witness appearing before it. *Hill v. Briggs*, 111 Ohio App.2d 405, 411 (10th Dist.1996), and the trial court instructed the jury accordingly. When assessing witness credibility, the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact, in this case the jury, and we cannot substitute our judgment for that of the jury. In this case, the jury elected to believe the state's witnesses. In view of the evidence presented, we cannot say that this decision constitutes a manifest miscarriage of justice or that the jury lost its way.

{¶23} Appellant's second assignment of error is without merit.

{¶24} Based on the foregoing, it is the order and judgment of this court that the judgment of the Trumbull County Common Pleas Court is affirmed.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

8