[Cite as *State v. Wade*, 2020-Ohio-2894.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-065** |
| EUGENE M. WADE, III, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas.
Case No. 2018 CR 001008.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, *Rocco DiPierro, Jr.* and *Jennifer A. McGee*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *R. Tadd Pinkston*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}    Appellant, Eugene M. Wade, III ("Wade"), appeals a judgment in the Lake County Court of Common Pleas, following a jury trial, sentencing him to 20 years in prison, which includes a total mandatory term of 108 months for two consecutive 54-month firearm specifications. We affirm the trial court's judgment.

{¶2}    On October 1, 2018, Wade was indicted on 14 counts relating to a shooting outside of an establishment in Lake County, Ohio, doing business as the Lake

Dine and Dance ("the Bar"). As stated in the indictment, the Grand Jury alleged that Wade discharged a firearm in the parking lot of the Bar multiple times, striking a vehicle as it pulled away. The driver of the vehicle was shot in the leg, and two passengers were present during the shooting. One of the passengers, Christina Askew ("Christina"), was on her phone inside of the vehicle at the time the shooting occurred. She immediately ended her conversation and called 911 to report the shooting and the driver's injury.

{¶3} A jury trial began on April 16, 2019. The state of Ohio called various witnesses to the events on the night of the shooting, the investigation conducted thereafter, and the forensic analysis of the recovered evidence. Christina was subpoenaed to testify but did not appear. The driver who was shot, Janelle Dowdy ("Dowdy"), was not called as a witness.

{¶4} The third passenger in the vehicle, Ray'Mond Askew ("Ray'Mond"), testified about the events at the Bar on the night of the shooting. Ray'Mond stated that Dowdy, himself, and Christina arrived at the Bar to pick up a food order. He claimed that Wade entered the Bar with a friend thereafter and gave Ray'Mond and Christina a dirty look. Upon leaving the Bar, Ray'Mond stated that he ducked down because he knew "something was going to happen," and Wade shot at the car as it was leaving the parking lot. Ray'Mond claimed Wade was the shooter despite being ducked down at the time of the shooting and acknowledging that he did not see the shots being fired. Ray'Mond also testified that Christina was on the phone with the father of her child, who was imprisoned at the Lake County Jail at the time of the shooting (the "Jail Call"). After the shooting, Ray'Mond testified that Christina called 911 to report that Dowdy had been shot in the leg (the "911 Calls").

2

{¶5} Both the Jail Call and the 911 Calls were recorded. Witnesses for the state testified with regard to the recording process for the calls, the methodology for identifying an inmate at the jail based on a unique PIN assigned to each inmate for making and receiving calls, and the procedures utilized by 911 call responders for recording calls and identifying callers both generally and on the night of the shooting. After this testimony, the Jail Call and the 911 Calls were played in their entirety for the jury. In the calls, Christina identifies Wade as the shooter multiple times.

{¶6} In addition, the state introduced various other forms of evidence supporting conviction. This included testimony from Wade's friend, who drove him to the Bar on the night of the shooting. Also, testimony was introduced from investigating officers about the night of the shooting, as well as the days that followed. A drone operator testified regarding a drone being used to search the property surrounding the Bar for a firearm the morning after the shooting occurred. No firearm was ever recovered. A bullet was found near the roadside where the shooting occurred, which was analyzed by a forensic expert who testified and provided a trajectory analysis for shots fired into the vehicle after conducting an investigation while the vehicle was being held in isolation. Further, extensive video evidence from over a dozen security cameras located at the Bar on the night of the shooting was presented to the jury showing Wade leaving the Bar in pursuit of the three victims, chasing after the vehicle as it pulled away from the Bar, and fleeing the property immediately thereafter.

{¶7} At the end of the state's case-in-chief, the defense made an oral motion for acquittal under Criminal Rule 29, which was denied. The defense then rested without presenting any witnesses and renewed the Rule 29 motion, which was again denied. After deliberations, on April 23, 2019, the jury found Wade guilty of 11 of the 14

counts contained in the indictment. The trial court ultimately ruled, for purposes of sentencing, that Count 2 for weapons under disability merged into Count 1; Count 4 for carrying a concealed weapon merged into Count 3; Count 6 for discharge of a firearm on or near prohibited premises merged into amended Count 7; and Count 9 for felonious assault merged into Count 8. The rulings on merger are not at issue on appeal.

{¶8} A sentencing hearing was held on June 3, 2019. The trial court reviewed, among other things, a presentence report from the Department of Adult Probation, statements from advocates speaking on behalf of Wade, Wade speaking on behalf of himself, and the recommendation made by the state of 25 years. No victim impact statements were submitted to the court prior to sentencing. Considering all of the aforementioned, the trial court ordered the following sentence for each charge:

> Count 1: Having weapons while under disability (R.C. 2923.13(A)(3)) (F-3) - 24 months;
>
> Count 3: Carrying concealed weapons (R.C. 2923.12(A)(2)) (F-4) - 12 months;
>
> Count 5: Possessing firearm in liquor permit premises (R.C. 2923.121(A)) (F-3) - 12 months;
>
> Count 7: Discharge of firearm on or near prohibited premises (R.C. 2923.162(A)(3)) (F-1) - 72 months served concurrently with count 8 and consecutively with counts 1, 3, and 5, as well as consecutively with a mandatory sentence of 54 months for a firearm specification (R.C. 2941.145) and the firearm specification in count 8;
>
> Count 8: Felonious assault (R.C. 2903.11(A)(1)) (F-2) - 72 months served concurrently with count 7 and consecutively with counts 1, 3, and 5, as well as consecutively with a mandatory sentence of 54 months for a firearm specification and the firearm specification in count 7;

Count 10: Felonious assault (R.C. 2903.11(A)(2)) (F-2) - 36 months served concurrently with count 11 and consecutively with counts 1, 3, 5, 7, and 8;

Count 11: Felonious assault (R.C. 2903.11(A)(2)) (F-2) - 36 months served concurrently with count 10 and consecutively with counts 1, 3, 5, 7, and 8.

The trial court also ordered the sentence to be served consecutively with a term already imposed and being served by Wade in Lake County Case No. 18-CR-215. The length of Wade's sentence and the imposition of consecutive sentencing is not at issue in the present appeal.

{¶9} Wade filed a timely notice of appeal and raises four assignments of error for our review. For clarity and convenience, we combine and consider the assignments out of order.

{¶10} Wade's first two assignments of error challenge the admissibility of the phone calls presented to the jury at trial. The Jail Call and the 911 Calls will be addressed separately for these assignments of error. Wade's first assignment of error states:

**FIRST ASSIGNMENT OF ERROR**

THE DEFENDANT-APPELLANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND FAIR TRIAL UNDER THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION WHEN THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING UNAUTHENTICATED RECORDINGS UNDER EVID.R. 901.

{¶11} "To be admissible, a tape recording must be authentic, accurate, and trustworthy." *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶109 (citation omitted). The Rules of Evidence, "[b]y way of illustration only, and not by way of

5

limitation," expressly sanction certain methods of authentication. Evid.R. 901(B). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A); *see also State v. Jaskiewicz*, 11th Dist. Trumbull No. 2012-T-0051, 2013-Ohio-4552, ¶12 ("[t]he threshold for admission is quite low").

{¶12} "'[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be.'" *Id.,* quoting *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, ¶25 (4th Dist.). "A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence." *Id.* (citation omitted).

{¶13} "'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.'" *State v. Long*, 11th Dist. Lake No. 2013-L-102, 2014-Ohio-4416, ¶20, quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. "The term 'abuse of discretion' is one of art, 'connoting judgment exercised by a court which neither comports with reason, nor the record.'" *Id.,* quoting *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30. "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.,* quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶67.

{¶14} "When a party objects to the introduction of evidence, and states a specific ground for objection, the party is considered to have waived all other grounds for

6

excluding the evidence." *State v. Bestvina*, 11th Dist. Ashtabula No. 92-P-0093, 1993 WL 268835, *2 (July 16, 1993) (citations omitted). Wade's trial counsel objected to the admission of the calls as inadmissible hearsay but did not object for failure to authenticate the caller. Thus, Wade has forfeited all but plain error review under this assignment of error. *See State v. Bennett*, 11th Dist. Ashtabula No. 2002-A-0020, 2005-Ohio-1567, ¶55 (applying plain error analysis to a failure to object to hearsay testimony at trial). Although an appellate court may notice plain error under Crim.R. 52(B), such notice "is to be taken with the utmost caution; under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶15} In the present matter, authentication of the speaker in each of the phone calls fails to rise to the stringent level of plain error in light of the direct and circumstantial evidence establishing the identity of the speaker. In addition, Wade's counsel never questioned who the speaker was and repeatedly referred to the caller as Christina Askew to the jury and the court during the trial.

**The Jail Call**

{¶16} With regard to the Jail Call, the identity of the inmate was established through the jail calling system and PIN associated with the inmate. Further, Ray'Mond testified that Christina was on the phone with the inmate at the time of the shooting. This testimony is supported by the time-stamped video surveillance footage showing Christina on the phone as she left the Bar. The person in the video was identified as Christina by multiple witnesses. Finally, the inmate was in a relationship with Christina, was the father of at least one of Christina's children, and was the registered owner of

7

the vehicle. During the call, the inmate asks about "the kids," supporting the inference that Christina—as mother of their child—was the other party on the call.

**The 911 Calls**

{¶17} With regard to the 911 Calls, two witnesses who spoke directly to the caller testified at trial, and Ray'Mond testified that Christina was on the phone with 911 directly after the shooting. The initial call, which is made 14 seconds after the end of the Jail Call, includes the exact same allegations made by Christina in the Jail Call. The caller stated that she was at the Bar with two others picking up food, Wade shot at the vehicle as it was leaving, and the driver had been shot in the leg. In follow-up calls after losing connection, the caller stated they were waiting for medical attention at the residence where Ray'Mond testified that Christina lives with her mother.

{¶18} All of this constitutes direct and circumstantial evidence sufficient to constitute a rational basis for a jury to decide that the caller in both of the calls was Christina. Thus, we find no plain error in the admission of these calls at trial.

{¶19} Wade's first assignment of error is without merit.

{¶20} Wade's second assignment of error states:

**SECOND ASSIGNMENT OF ERROR**

THE TRIAL COURT VIOLATED THE DEFENDANT-APPELLANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO FAIR TRIAL, DUE PROCESS AND CONFRONTATION WHEN IT ADMITTED OUT OF COURT STATEMENTS INTO EVIDENCE.

{¶21} Wade's second assignment of error contains two issues: (1) were the statements admitted into evidence permissible under an exception to the prohibition on hearsay; and (2) even if permissible under an exception to hearsay, were the statements violative of Wade's Constitutional right to confront witnesses where the

8

statements made were testimonial in nature and Wade had no opportunity to cross examine the unavailable declarant. We find Wade's assignment of error lacks merit on both issues presented.

{¶22} Although we apply an abuse of discretion standard to evidentiary rulings on matters such as relevancy and authentication, the trial court does not have discretion to admit hearsay "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio." Evid.R. 802; *see also Jack F. Neff Sand & Gravel, Inc. v. Great Lakes Crushing, Ltd.*, 11th Dist. Lake No. 2012-L-145, 2014-Ohio-2875, ¶23, citing *State v. DeMarco*, 31 Ohio St.3d 191, 195 (1987). Therefore, we apply a de novo review to determine whether the testimony here constitutes inadmissible hearsay. *Id.*, citing *John Soliday Fin. Group, LLC v. Pittenger*, 190 Ohio App.3d 145, 150, 2010-Ohio-4861 (5th Dist.).

**Hearsay**

{¶23} Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless it falls into one of the applicable exceptions. Evid.R. 802.

{¶24} One such exception is the excited utterance. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid.R. 803(2).

{¶25} Further, "the admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive or leading, (2) facilitates the

9

declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Wallace*, 37 Ohio St.3d 87 (1988), paragraph two of the syllabus.

{¶26} "'There is no *per se* amount of time after which a statement can no longer be considered to be an excited utterance. The central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be the result of reflective thought.'" *State v. Dengg*, 11th Dist. Portage No. 2008-P-0063, 2009-Ohio-4101, ¶58, quoting *State v. Taylor*, 66 Ohio St.3d 295, 303 (1993) (emphasis deleted); *see also State v. Butcher*, 170 Ohio App.3d 52, 2007-Ohio-118, ¶31 (11th Dist.).

{¶27} There is also a present sense impression exception to the hearsay rule, which is limited to "describing or explaining" the event. *State v. Foster*, 11th Dist. Trumbull No. 97-T-0094, 1998 WL 684834, *5 (Sept. 25, 1998). A present sense impression is defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness." Evid.R. 803(1); *State v. Urso*, 11th Dist. Trumbull No. 2011-T-0005, 2011-Ohio-4702, ¶68.

{¶28} "Ohio courts have held that '911 calls are generally admissible as excited utterances or present sense impressions.'" *Urso*, *supra*, at ¶69, quoting *State v. Johnson*, 10th Dist. Franklin No. 08AP-652, 2009-Ohio-3383, ¶22; *see also State v. Rose*, 8th Dist. Cuyahoga No. 89457, 2008-Ohio-1263, ¶42 (citations omitted) ("Precedent overwhelmingly supports the conclusion that 911 calls are admissible either as excited utterances or present sense impressions.").

10

{¶29} In the present matter, during both the Jail Call and the 911 Calls, Christina described Wade shooting at the vehicle she was in, and the resulting injuries that required medical attention, as she was perceiving it. Therefore, both calls were a present sense impression.

{¶30} Further, the statements made by Christina in both phone calls were excited utterances, as well. Certainly the reaction Christina had on the Jail Call and at the beginning of the 911 Calls to an individual chasing after and discharging a firearm into a vehicle where she was a passenger, as well as witnessing the driver of the vehicle being shot, would cause her to be under the stress of excitement. Even in the second call with 911, after several minutes had passed, the driver (a relative of Christina's) was still in need of medical attention. The crisis was ongoing as the victims waited for medical help to arrive, and the questions from 911 during the second call were neither coercive nor leading. They facilitated Christina's expression of the natural focus of her thoughts—the shooting. Finally, the small gap in time did not destroy the domination of the nervous excitement over Christina's reflective faculties.

**Confrontation Clause**

{¶31} Regardless of whether statements are permissible under the exceptions to the hearsay prohibition, the Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court determined the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.'" *Crawford v. Washington*, 541 U.S. 36, 51 (2004). The Supreme Court held that the right to confrontation applies to all "testimonial statements." *Id.* at syllabus. To determine whether a statement is testimonial in nature,

11

the proper inquiry is "'whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.'" *State v. Metter*, 11th Dist. Lake No. 2012-L-029, 2013-Ohio-2039, ¶35, quoting *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir.2004).

{¶32} In *Davis v. Washington*, 547 U.S. 813 (2006), the Supreme Court again emphasized that the admission of a hearsay statement is a violation of the Confrontation Clause only if the statement is "testimonial." The Court determined that the Confrontation Clause is not applicable to statements made "to enable police assistance to meet an ongoing emergency." *Id.* at 822. The Supreme Court, in affirming the trial court's decision to admit 911 statements, explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.*

{¶33} Wade argues that the Jail Call was testimonial in nature because "[o]ne of the purposes behind the practice of recording jail calls is to use those recordings as evidence in future prosecutions." Therefore, because jail call recordings are used in some instances by prosecutors as evidence in criminal proceedings, he contends Christina's communication with the father of her child went from "two loved ones speaking about trivial matters" before the shooting, into a documentary device—using the Jail Call to create recorded testimony implicating Wade as the shooter. We are not persuaded.

12

{¶34} The primary purpose for Christina's phone call to the inmate at the jail was to speak to a loved one about, inter alia, each of their planned activities for that night. Both parties discussed what they had been doing prior to the Jail Call, and nothing under the circumstances indicated that Christina had any reason to believe she was about to become the victim of a shooting. Her statements made as the vehicle was being shot at were instantaneous with a traumatic and frightening event, as discussed above. The record is de hors of any indication that Christina intended to use the phone call—including the seconds following the shooting before she hung up to call 911—as a means to testify regarding the events she was witnessing happen in real time.

{¶35} Wade also asserts that the 911 Calls were testimonial in nature because of the time that passed between the initial call and the follow-up calls after Christina was disconnected. Again, we disagree.

{¶36} The initial call to 911 occurred approximately 14 seconds after the Jail Call ended, which is immediately after the shooting occurred. Christina's primary purpose, given the unfolding circumstances, was to report the shooting and the medical needs of the driver who had been shot. The follow-up call was also for the primary purpose of getting the driver medical attention for the gunshot wound suffered while leaving the Bar. Once again, there is no indication from the record that Christina intended to use the 911 Calls as a means to testify regarding the events she was witnessing happen in real time.

{¶37} For all of the foregoing reasons, the trial court did not violate Wade's rights under the Confrontation Clause when it admitted the Jail Call and 911 Calls into evidence and allowed them to be played for the jury. The statements made during the

13

calls were nontestimonial in nature and were excepted under the rule prohibiting the introduction of hearsay.

{¶38} The second assignment of error is without merit.

{¶39} Wade's fourth assignment of error states:

**FOURTH ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT RETURNED A VERDICT OF GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶40} "In determining whether the verdict was against the manifest weight of the evidence, '* * *[t]he court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *'" *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *5 (Dec. 23, 1994) (emphasis sic), quoting *State v. Davis*, 49 Ohio App.3d 109, 113 (8th Dist.1988). A judgment of a trial court should be reversed as being against the manifest weight of the evidence "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶41} There is a presumption that the findings of the trier of fact are correct, because the trier of fact has had the opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984); *see also* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192, (1978) ("* * * [I]n determining whether the judgment below is manifestly

14

against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * * If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.").

{¶42} The jurors in the matter sub judice were presented with overwhelming evidence from which they could reasonably conclude that Wade committed the charged crimes. Video surveillance records from over a dozen cameras on site at the Bar were presented to the jury. These videos showed Wade waiting in the doorway of the Bar as the victims entered their vehicle, exiting the Bar with his hand concealed, and chasing after the vehicle at the exact moment the shooting occurred. Testimony from an eyewitness who observed the events of the evening, as well as phone calls occurring at the time of the shooting, all accused Wade of discharging a firearm at the vehicle over a public road as it pulled away from the Bar, which evidence showed was a liquor permit premise. The timing recorded on the call audio and the video surveillance were testified to and confirmed to be accurate. They are entirely consistent and support the jury's conclusion that Wade was the shooter. This was not an instance where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed; to the contrary, the evidence firmly supported a finding that Wade committed the crimes with which he was found guilty.

{¶43} Wade's fourth assignment of error is without merit.

{¶44} Wade's third assignment of error states:

15

**THIRD ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED HIS MOTION FOR ACQUITTAL MADE PURSUANT TO CRIM.R. 29(A).

{¶45} Pursuant to Crim.R. 29(A), "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A) requires the trial court to grant a motion for judgment of acquittal if the evidence is insufficient to sustain a conviction on the charged offense(s). "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166 & 2003-T-0167, 2004-Ohio-6688, ¶18.

{¶46} "A challenge to the sufficiency of the evidence raises a question of law as to whether the prosecution met its burden of production at trial." *State v. Bernard*, 11th Dist. Ashtabula No. 2016-A-0063, 2018-Ohio-351, ¶56, citing *Thompkins*, *supra*, at 390 and *State v. Windle*, 11th Dist. Lake No. 2010-L-033, 2011-Ohio-4171, ¶25. "'In reviewing the record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."'" *Id.*, quoting *State v. Smith*, 80 Ohio St.3d 89, 113 (1997), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Where there is insufficient evidence, a conviction will be vacated. *Id.* at ¶55, citing *State v. Rose*, 11th Dist. Lake No. 2014-L-086, 2015-Ohio-2607, ¶32.

{¶47} A finding that a judgment is not against the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶32. Having determined that Wade's convictions are not against the manifest weight of the evidence, it follows that they are supported by sufficient evidence.

{¶48} Wade's third assignment of error is without merit.

{¶49} The judgment of the Lake County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.