[Cite as *State v. Wade*, 2022-Ohio-1006.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

EUGENE M. WADE, III,

        Defendant-Appellant.

CASE NO. 2021-L-049

Civil Appeal from the
Court of Common Pleas

Trial Court No. 2018 CR 001008

**O P I N I O N**

Decided: March 28, 2022
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Susan J. Moran*, 1382 West 9th Street, Suite 410, Cleveland, OH 44113 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1}   Defendant-appellant, Eugene M. Wade, III, appeals from the judgment of the Lake County Court of Common Pleas, denying his petition for postconviction relief. For the following reasons, we affirm the decision of the lower court.

{¶2}   On October 1, 2018, the Lake County Grand Jury issued an indictment against Wade for the following: two counts of Having Weapons While Under Disability, felonies of the third degree, in violation of R.C. 2923.13(A)(2) and (3); two counts of Carrying Concealed Weapons, felonies of the fourth degree, in violation of R.C.

2923.12(A)(2); Illegal Possession of Firearm in Liquor Permit Premises, a felony of the fifth degree in violation of R.C. 2923.121(A); two counts of Discharge of Firearm on or Near Prohibited Premises, felonies of the first and third degree, in violation of R.C. 2923.162(A)(3); four counts of Felonious Assault, felonies of the second degree, in violation of R.C. 2903.11(A)(1) and (2); and three counts of Attempted Murder, felonies of the first degree, in violation of R.C. 2923.02(A) and 2903.02(A). Accompanying firearm specifications were also included in the indictment.

{¶3} A jury trial was held on April 16-19, 2019. On April 16, the State sought and the court granted an arrest warrant for a witness, Christina Askew, due to her failure to appear pursuant to a subpoena.

{¶4} At trial, Ray'Mond Askew testified that he, his sister Christina Askew, and their cousin Janelle Dowdy, went to a bar, the Lake Dine and Dance, to pick up a food order. While they were there, Wade entered the bar with his friend, Tyler Kelly. Ray'Mond testified that Wade gave him a "weird look," did not speak with him or Christina, and spoke briefly with Dowdy, whom he had dated. Ray'Mond, Christina, and Dowdy left the bar and went to their car. Ray'Mond testified that he observed Wade standing at the door of the bar as they were driving away and Ray'Mond, who was in the back seat, ducked down because he "didn't know what was going to happen." He did not observe anyone else in the parking lot at that time. As they were turning onto the street, Ray'Mond heard two gunshots and Dowdy screamed "I'm shot." Dowdy subsequently received medical treatment for a gunshot wound to her leg.

{¶5} Wade's friend, Kelly, testified that she went with Wade to the bar on the night of the shooting. While at the bar, she used the restroom, and when she returned,

2

Wade and the other three were no longer present in the bar or the parking lot.

{¶6} 911 calls made at the time of the shooting were played, in which a female voice purporting to be Christina's based on the context and circumstances, stated "Eugene Wade just shot my car up and he just shot my friend" at the Lake Dine and Dance. She identified that Dowdy was shot in the leg and that she saw "Eugene Wade * * * with [her] own two eyes, shoot at" the vehicle. A recording of a phone call that took place between Christina and her child's father, who was incarcerated, around the time she was leaving the bar, was also played. In that call, after conversation about other topics, Christina yelled "G [a nickname for Eugene] just shot my car up. * * * G just shot Janelle."

{¶7} Video evidence was presented from over a dozen cameras at the bar on the night of the shooting. It showed the parties behaving consistently with Kelly's and Ray'Mond's testimony. The person identified as Wade in their testimony can be seen exiting the bar behind Christina, Ray'Mond, and Dowdy, standing in the doorway, chasing after the vehicle toward the road, where the shooting was alleged to have taken place, and then running from the property.

{¶8} Following the shooting, police discovered a bullet fragment in the road near the bar. A forensic analyst from the Lake County Crime Lab testified that the marks in the vehicle driven by Dowdy were consistent with bullet holes and that she discovered a fragment consistent with a copper jacket of a bullet in the vehicle.

{¶9} At the close of the State's case, the defense moved for acquittal pursuant to Civ.R. 29, which was denied. The defense then rested without presenting witnesses and renewed the Rule 29 motion, which was denied. Wade was convicted of all counts

3

as charged in the indictment except for the three counts of Attempted Murder for which he was acquitted.

{¶10} A sentencing hearing was held on June 3, 2019. The court ordered Wade to serve an aggregate prison sentence of twenty years in prison. This sentence was memorialized in a June 17, 2019 Judgment Entry of Sentence.

{¶11} Wade appealed to this court, raising issues relating to the admission of certain unauthenticated recordings and hearsay statements, and the weight and sufficiency of the evidence supporting the convictions. This court affirmed Wade's convictions. *State v. Wade*, 11th Dist. Lake No. 2019-L-065, 2020-Ohio-2894. He subsequently filed a motion for reopening arguing ineffectiveness of appellate counsel for failure to raise issues involving sentencing, merger, and failure of the State to present sufficient evidence regarding the 911 caller's identity. The motion was denied.

{¶12} On August 21, 2020, Wade filed a Petition for Post-Conviction Relief, arguing that he received ineffective assistance of counsel due to the failure to use exculpatory video of Dowdy accusing a shooter other than Wade, failure to secure her attendance at trial, and failure to cross-examine witnesses about her statements. It also argued the State engaged in prosecutorial misconduct when it made false statements about the video and that Dowdy did not identify another suspect. The State filed a response in which it argued that the petition was barred by the doctrine of res judicata and, alternatively, that the record did not demonstrate ineffective assistance of counsel nor that the State failed to disclose evidence.

{¶13} On April 2, 2021, the trial court issued a Judgment Entry denying Wade's Petition for Post-Conviction Relief. It found that the doctrine of res judicata applied

4

because he failed to previously raise the issue of ineffective assistance of counsel in his direct appeal as well as in his application for reopening and that the issues raised relied on information within the trial court record at the time of the appeal.

{¶14} Wade timely appeals and raises the following assignments of error:

{¶15} "[1.] Appellant was denied effective assistance of counsel, due process, and the right to a fair trial, when his counsel failed to utilize the exculpatory statements of the victim, failed to secure her attendance at trial with a subpoena; failed to examine/cross-examine witnesses regarding exculpatory evidence and failed to correct the State's misstatement of the evidence to the jury and trial court, as guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10, Ohio Constitution.

{¶16} "[2.] Appellant was denied due process and a fair and impartial trial as guaranteed by the 5th, 6th, and 14th amendments of the U.S. Constitution and Article I § 16 of the Ohio Constitution based on prosecutorial misconduct."

{¶17} In his first assignment of error, Wade argues that trial counsel was ineffective by failing to utilize exculpatory statements of the victim, Janelle Dowdy; failing to secure her attendance at trial with a subpoena; and failing to examine witnesses regarding this issue. He contends that the trial court erred in finding these arguments barred by res judicata since the video of Dowdy's statements was not part of the record and this argument could not have been raised on direct appeal. The State argues that "these claims could have been raised during trial proceedings or through new counsel upon direct appeal without resort to evidence outside the record as the evidence Appellant proffered in his petition was fully discussed on the record during Appellant's

5

trial."

{¶18} "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States" may "file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." R.C. 2953.21(A)(1)(a)(i). Generally, an abuse of discretion standard of review is applied to a trial court's decision to dismiss a petition for postconviction relief without a hearing. *State v. Parks*, 11th Dist. Lake No. 2021-L-021, 2021-Ohio-2883, ¶ 10. "However, if a trial court denies a petition on legal grounds, e.g., by application of the doctrine of res judicata, this court's review is de novo." *State v. Davies,* 11th Dist. Ashtabula No. 2017-A-0013, 2017-Ohio-7961, ¶ 12.

{¶19} "Where ineffective assistance of counsel is alleged in a petition for postconviction relief, the defendant, in order to secure a hearing on his petition, must proffer evidence which, if believed, would establish not only that his trial counsel had substantially violated at least one of a defense attorney's essential duties to his client but also that said violation was prejudicial to the defendant." *State v. Cole*, 2 Ohio St.3d 112, 114, 443 N.E.2d 169 (1982).

{¶20} In the present matter, the trial court found that the petition was barred by the doctrine of res judicata because there was evidence in the record that would have allowed this issue to be raised in a direct appeal. "Under the doctrine of res judicata, a defendant cannot raise an issue in a postconviction petition if he or she *raised or could have* raised the issue at the trial that resulted in that judgment of conviction or on an

6

Case No. 2021-L-049

appeal from that judgment." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 92; *Cole* at the syllabus ("[w]here defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief").

{¶21} The subject of dispute here is whether there was evidence in the record that would have allowed this claim to be presented on direct appeal. As this court has observed, "[w]here a claim of ineffective assistance of counsel is based on evidence that is outside of the record, it is * * * properly pursued in a petition for post-conviction relief since such a claim is 'impossible to resolve on direct appeal.'" (Citation omitted.) *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 2019-L-031, 2019-Ohio-4000, ¶ 21.

{¶22} The evidence in question is an interview conducted with Dowdy. In that interview, a video of which was made part of the record during the post-conviction stage, Dowdy stated that she was unaware who the shooter was, did not remember much about the shooting, and denied multiple times that Wade was the shooter. She identified that the shooter was wearing a black hoodie and pants. The video was not played for the jury at trial or presented as an exhibit. Discovery records filed with the court show that the State did provide to the defense the recording of the foregoing interview with Dowdy, as well as her initial interview. Further, at trial, defense counsel questioned Detective Hren whether he was aware that there was an identification of a suspect being "someone in a black hoodie." He denied being aware of this. Following that testimony, counsel approached the bench and the prosecutor stated the following:

> The question Mr. Deeb [defense counsel] just asked of Detective
> Hren, I believe, Mr. Deeb is referring to an interview of Janelle

7

Dowdy, that was with Detective Moon at the Sheriff's Office, who is no longer with the Sheriff's Office, but who had previously been employed with the Sheriff's Office. This was conducted on February 15th * * * 2018[.] Your Honor, that is detailed in Detective Moon's supplemental report that was provided to defense and in there Janelle Dowdy -- this is her second interview. She was initially interviewed at the hospital and then initially when she was interviewed she repeatedly identified Eugene Wade as the shooter.

There was an allegation that she had been paid off and then she came in and she was saying it was somebody in a black hoodie and jeans. And she said that someone had told her -- now she explained that somebody told her that Eugene was the shooter because she was agitated in the car and she didn't know if it was him shooting. So this person that Mr. Deeb asked the detective about as a suspect that was brought up with the black hoodie and jeans I think is the same person who she identified as Eugene Wade and I think that because the question was asked, introduced the possibility of that, someone identified somebody else, that's the same person identified as the Defendant. So I think that opens the door for me to ask Detective Hren.

The court responded that "Detective Hren didn't even know about this at all" and "there is no evidence of that and this witness wouldn't even know what you're talking about." No further action was taken.

{¶23} Ohio courts have held that, for a defendant "to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of the trial." *In re B.C.S.*, 4th Dist. Washington No. 07CA60, 2008-Ohio-5771, ¶ 14; *State v. Mills*, 5th Dist. Tuscarawas No. 2008 AP 08 0051, 2009-Ohio-5654, ¶ 93 ("[e]vidence offered *de hors* the record must be more than evidence which was in existence and available to the appellant at the time of the trial and which could and should have been submitted at trial if the appellant wished to make use of it"). Similarly, in the present matter, the evidence in question was available

8

to Wade at the time of trial.

{¶24} Wade argues, however, that this issue could not have been reviewed by the appellate court on a direct appeal since the interview would not have been available to the court, having not been made part of the record. *See State v. Martin*, 2d Dist. Montgomery No. 27844, 2018-Ohio-3505, ¶ 13 (where a claim for postconviction relief relies on statements made to police that "were not part of the record on direct appeal," res judicata did not apply).

{¶25} This issue could have been raised and reviewed on direct appeal. The statement of the prosecutor conveys that there is a separate video in which the victim gave a conflicting statement, indicating that there was an allegation the victim had been "paid" off and stated the shooter was "somebody in a black hoodie and jeans." From the video, Wade appears to be wearing a jacket with lighter colored sleeves and no hood. Further, the prosecutor indicated that, in contrast with her prior repeated identification of Wade, Dowdy "now explained that somebody told her that Eugene was the shooter because she was agitated in the car and she didn't know if it was him shooting." It is evident from this statement both that defense counsel was fully aware of the other interview and that appellate counsel reviewing this matter should have also been made so aware from a review of the record.

{¶26} Wade emphasizes that a review on direct appeal could not have been properly conducted because the interview gives a more accurate picture of its content and whether further action should have been taken by defense counsel to have the video admitted and seek Dowdy to testify at trial. If we were to decide the case on the merits and presuming res judicata does not apply, we do not find that Wade can prevail on a

9

claim of ineffective assistance of counsel.

{¶27} In order to succeed on such a claim, Wade must demonstrate both that counsel was ineffective and that this resulted in prejudice. *Cole*, 2 Ohio St.3d at 114, 443 N.E.2d 169. Where there is overwhelming evidence of a defendant's guilt, prejudice does not result from trial counsel's alleged ineffectiveness and reversal is not warranted. *State v. Robinson*, 10th Dist. Franklin No. 20AP-128, 2021-Ohio-3496, ¶ 54 (the appellate court determined, in light of the overwhelming evidence of a defendant's guilt, that it need not consider trial counsel's alleged ineffectiveness since no prejudice could result); *see State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 175 ("there is no likelihood that Trimble was prejudiced by the mention of his prior conviction because of the overwhelming evidence establishing his guilt"). Here, the testimony of Ray'Mond demonstrated that he saw Wade before the shooting and no one else was in the parking lot. The video showed Wade, who was identifiable from witness testimony of the events, exiting the club immediately after Christina, Ray'Mond and Dowdy, and running after their vehicle to the road, which is where testimony indicated the shooting took place. There is nothing in the video to show another person in the vicinity of the vehicle at the time of the shooting. The evidence indisputably shows Dowdy suffered a gunshot wound while in the vehicle. Multiple audio recordings of Christina's phone calls to 911 and her child's father were placed into evidence in which she identified Wade as the shooter several times. Significantly, when addressing Wade's manifest weight challenge in the direct appeal, this court specifically held that "[t]he jurors in the matter sub judice were presented with overwhelming evidence from which they could reasonably conclude that Wade committed the charged crimes." *Wade*, 2020-Ohio-2894, at ¶ 42.

10

{¶28} The first assignment of error is without merit.

{¶29} In his second assignment of error, Wade contends that the State misrepresented evidence and improperly argued at trial that Dowdy identified no other suspects when there was evidence to show that Dowdy had made a statement about another suspect.

{¶30} To address allegations of prosecutorial misconduct, we "must determine (1) whether the prosecutor's conduct was improper and (2) if so, whether it prejudicially affected [the defendant's] substantial rights." *State v. LaMar,* 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 121. "[P]rosecutorial misconduct alone does not require a new trial." *State v. Hamad*, 11th Dist. Trumbull No. 2017-T-0108, 2019-Ohio-2664, ¶ 123. "The conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987), citing *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). "[I]t must be clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found defendant guilty." *Maurer* at 267.

{¶31} Wade's argument that the State's alleged misrepresentation of the contents of Dowdy's interview could not have been raised on direct appeal and subject to res judicata has merit. To determine whether the State's characterization of the video was false, it is necessary to be able to review the video, which was not part of the appellate record in the direct appeal. While the lower court denied the post-conviction petition solely on the ground of res judicata, reversal is not warranted since there are no substantive grounds for relief on the merits of the claim and, thus, no post-conviction relief can be granted nor was a hearing necessary on Wade's petition.

11

{¶32} Considering the merits of Wade's claim, he argues that the prosecutor allowed testimony that was untrue and misrepresented evidence. It is accurate that "[a] prosecutor has a duty to ensure that a criminal defendant receives a fair trial, which includes obligations to refrain from knowingly using perjured testimony and to correct testimony known to be false" and that, "[u]nder certain circumstances, a prosecutor's failure to meet these obligations might constitute prosecutorial misconduct." *State ex rel. Sands v. Coulson*, 163 Ohio St.3d 275, 2021-Ohio-671, 169 N.E.3d 663, ¶ 8. Here, the prosecution did correctly state to the court that Dowdy had given conflicting testimony. As the State argues, it appears the prosecutor believed that Dowdy's statement about the man in the black hoodie referred to Wade, given he was the only person who appeared from the video to be present at the time of the shooting. While he could have been clearer in describing that Dowdy had essentially recanted her accusation against Wade, the prosecutor brought this argument forward while contending that the questioning by the defense opened the door for other evidence and/or questions relating to Dowdy's statements. The fact that the prosecutor characterized the evidence according to his interpretation does not amount to misconduct. Further, the statement itself was included in discovery, the defense had the chance to review it, and it could have advanced to the court and jury any relevant argument regarding this interview. The prosecution "allowing" Hren to give false testimony that he was unaware of the statement regarding the suspect in the black hoodie lacks merit as well since there is nothing in the record to indicate Hren gave false testimony. Of note, the trial court judge observed that Hren appeared to be unaware of the potential other suspect.

{¶33} Wade also argues that a *Brady* violation occurred. A Brady violation occurs

12

when a prosecutor "(1) suppresses evidence (2) that is favorable to the defendant, when that evidence (3) is material to guilt or innocence." (Citation omitted.) *State v. Trimble*, 11th Dist. Trumbull No. 2015-P-0038, 2016-Ohio-1307, ¶ 26; *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). This argument lacks merit as there is simply nothing in the record to show that the State failed to disclose or suppressed any evidence.

{¶34} Further, even if there were validity to the claim of prosecutorial misconduct, it cannot be demonstrated that, absent the prosecutor's actions here, Wade would not have been found guilty. For the reasons discussed above, there was overwhelming evidence of his guilt that overcomes any potential prejudice.

{¶35} The second assignment of error is without merit.

{¶36} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, denying Wade's petition for postconviction relief, is affirmed. Costs to be taxed against appellant.

JOHN J. EKLUND, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.

Case No. 2021-L-049