[Cite as *State v. Burke*, 2020-Ohio-5474.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2020-T-0013** |
| - vs - | : | |
| AUSTIN TAYLOR BURKE, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2017 CR 00403.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor; *Christopher Becker* & *Ashleigh Musick*, Assistant Prosecutors, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*Megan M. Patituce* & *Kimberly Corral*, Patituce & Associates, LLC, 16855 Foltz Parkway, Strongsville, OH 44149 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1}  Appellant, Austin Taylor Burke ("Burke"), appeals from the February 27, 2020 judgment entry of the Trumbull County Court of Common Pleas, granting summary judgment in favor of appellee, the state of Ohio, on Burke's petition for postconviction relief.  At issue on appeal is whether the trial court erred in dismissing Burke's petition without first holding an evidentiary hearing.  For the reasons that follow, we conclude the trial court did not abuse its discretion in weighing the credibility of the

affidavits submitted with Burke's petition or in determining there were insufficient grounds for relief to warrant a hearing. Further, the affidavit testimony does not rise to the level of demonstrating a violation or infringement of Burke's constitutional rights. The judgment is affirmed.

## PROCEDURAL POSTURE

{¶2} On March 9, 2018, a Trumbull County jury found Burke guilty of six criminal charges related to the murder of Kenneth Brandon Sample ("Brandon") and the armed robbery of a Pizza Joe's restaurant: one count of aggravated murder, two counts of aggravated robbery, one count of tampering with evidence, and two counts of having weapons while under disability. The trial court sentenced Burke to life imprisonment with parole eligibility after 47 years.

{¶3} Burke's convictions were upheld by this court on direct appeal. The matter was remanded to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry, incorporating the consecutive sentence findings that were made at the sentencing hearing and correcting a clerical error related to the firearm specifications. *State v. Burke*, 11th Dist. Trumbull Nos. 2018-T-0032 & 2018-T-0035, 2019-Ohio-1951.

{¶4} Burke, by and through his counsel of record, filed a Petition for Postconviction Relief and Motion for a New Trial on May 16, 2019. The instant appeal relates solely to the denial of Burke's Petition for Postconviction Relief.

{¶5} Rather than claims for relief, Burke set forth "Issues Gleaned from the Affidavits," all prefaced by the following sentence:

> Based on the accompanying affidavits, the defense posits that the following points of fact present competent and credible evidence dehors the record of, inter alia, constitutional error in terms of prosecutorial discovery misfeasance, nonfeasance, and/or

2

malfeasance, in terms of the Fourth, Fifth, Sixth Amendments, and Fourteenth Amendments to the U.S. Constitution, particularly of the Sixth Amendment's directive that a defendant be "…informed of the nature and cause of the accusation[,]" trial counsel misfeasance, nonfeasance, and/or malfeasance relative to the disclosure and investigation of evidence in terms of the Sixth (and Fourteenth Amendments') guarantees of the right to effective assistance of counsel, one instance of jury misconduct, in violation of the Sixth and Fourteenth Amendment's jury guarantees, and many instances witness malfeasance relative to the veracity of certain facts, such to violate, inter alia, the Sixth Amendment confrontation clause, as it applies to the state through the Fourteenth Amendment. [Sic throughout.]

Thus, the following claims have been identified from Burke's petition throughout the postconviction proceedings: (1) a prosecutorial discovery violation; (2) ineffective assistance of trial counsel; (3) juror misconduct; and (4) a confrontation clause violation due to lack of witness credibility.

{¶6} Burke attached many exhibits to his petition, incorporated by way of eleven affidavits—one each from Cassandra Boyles, Donna Cottrill, Lisa Cope, and Lori White; two from Burke's younger brother, Gage Sell; and five from Burke's mother, Jamie Sell.

{¶7} On June 3, 2019, the state of Ohio filed a Motion for Summary Judgment on Burke's Petition for Postconviction Relief. The state contended that Burke failed to argue any of his claims with specificity and that none of the affidavits or documents attached to his petition support a claim of the denial or infringement of Burke's constitutional rights.

{¶8} Burke responded to the summary judgment motion on September 20, 2019. He attached an additional affidavit from Lisa Cope and a DVD-ROM of phone records.

3

{¶9} On November 18, 2019, Burke filed a Motion to Obtain Trumbull County Juvenile Records, in which he requested the trial court issue an order directing the Trumbull County Juvenile Detention Center to release records of a certain juvenile referenced in some of the affidavits attached to Burke's petition. On November 26, 2019, the trial court overruled this motion on the basis that Burke had failed to show that he was entitled to the confidential juvenile records. The trial court stated, however, that it had secured the juvenile records under seal and had conducted an *in camera* review for the purpose of addressing the relevant content in conjunction with the Petition for Postconviction Relief.

{¶10} The trial court issued its final order in this matter on February 27, 2020. The trial court determined Burke failed to establish substantive grounds for relief and therefore dismissed his Petition for Postconviction Relief and Motion for New Trial without hearing. The trial court concluded there are no genuine issues of material fact and granted summary judgment in favor of the state. Within this entry, the trial court also set forth findings of fact and conclusions of law. The trial court found Burke's petition vague, the affidavits unreliable and problematic, and the issues raised in the affidavits vulnerable to the application of res judicata.

{¶11} From this entry, Burke asserts one assignment of error for our review:

{¶12} "The trial court erred by dismissing the petition without an evidentiary hearing because the affidavits provided in a Petitioner's Motion to Vacate filed pursuant to R.C. 2953.21 established a meritorious issue."

4

{¶13} Burke contends the trial court erred by dismissing his petition without first holding an evidentiary hearing because the affidavits established a "meritorious issue" and a "prima facie case for a valid claim."

**POSTCONVICTION RELIEF STANDARD**

{¶14} R.C. 2953.21, Ohio's postconviction relief statute, provides, in pertinent part:

(A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief. * * *

(D) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner[.] * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal. * * *

(E) * * * Within twenty days from the date the issues are raised, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.

(F) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. * * *

(H) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition. * * *

{¶15} "According to the postconviction relief statute, a criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing." *State v. Calhoun*, 86 Ohio St.3d 279, 282 (1999), citing *State v. Cole*, 2 Ohio St.3d 112 (1982). "Before granting an evidentiary hearing on the petition, the trial court shall determine *whether there are substantive grounds for relief* (R.C. 2953.21[D]), *i.e.*, whether there are grounds to believe that 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.'" *Id.* at 282-283 (emphasis sic), quoting R.C. 2953.21(A)(1).

{¶16} "Postconviction relief is a remedy sought by a defendant who has either been tried and found guilty beyond a reasonable doubt, or who has pled guilty and has been convicted. In the interest of judicial economy and efficiency, [the Supreme Court of Ohio has] held that it is not unreasonable to require the defendant to show in his petition for postconviction relief that such errors resulted in prejudice before a hearing is scheduled." *Id.* at 283, citing *State v. Jackson*, 64 Ohio St.2d 107, 112 (1980).

{¶17} "[I]n reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge their credibility in determining whether to accept the affidavits as true statements of fact. To hold otherwise would require a hearing for every postconviction relief petition. Because the statute clearly calls for discretion in determining whether to grant a hearing, accepting all supporting affidavits as true is certainly not what the statute intended." *Id.* at 284.

{¶18} "Unlike the summary judgment procedure in civil cases, in postconviction relief proceedings, the trial court has presumably been presented with evidence sufficient to support the original entry of conviction, or with a recitation of facts attendant to an entry of a guilty or no-contest plea." *Id.* "The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *Id.* (citations omitted).

{¶19} "An affidavit, being by definition a statement that the affiant has sworn to be truthful, and made under penalty of perjury, should not lightly be deemed false. However, not all affidavits accompanying a postconviction relief petition demonstrate entitlement to an evidentiary hearing, even assuming the truthfulness of their contents." *Id.* "Thus, where a petitioner relies upon affidavit testimony as the basis of entitlement to postconviction relief, and the information in the affidavit, even if true, does not rise to the level of demonstrating a constitutional violation, then the actual truth or falsity of the affidavit is inconsequential." *Id.*, citing *State v. Perry*, 10 Ohio St.2d 175 (1967).

{¶20} "[A] trial court, in assessing the credibility of affidavit testimony in so-called paper hearings, should consider all relevant factors." *Id.* at 285 (citation omitted). "Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success of the petitioner's efforts, and (5)

7

whether the affidavits contradict evidence proffered by the defense at trial." *Id.* "Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony." *Id.* (citation omitted).

{¶21} "Depending on the entire record, one or more of these or other factors may be sufficient to justify the conclusion that an affidavit asserting information outside the record lacks credibility. Such a decision should be within the discretion of the trial court. A trial court that discounts the credibility of sworn affidavits should include an explanation of its basis for doing so in its findings of fact and conclusions of law, in order that meaningful appellate review may occur." *Id.*

{¶22} This court's standard of review, therefore, is whether the trial court abused its discretion in determining the affidavits lack credibility and that no substantive grounds for relief were raised that would warrant a hearing. *Id.* at paragraph one & two of the syllabus; *see also State v. Miller*, 11th Dist. Lake No. 2018-L-055, 2018-Ohio-5192, ¶12-13, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶51-52.

**CREDIBILITY OF AFFIDAVITS**

{¶23} Cassandra Boyles averred that she had a conversation with Ricky Roupe ("Ricky"), who was one of the trial witnesses, and another juvenile, who was the subject of the sealed juvenile records. This conversation allegedly took place at a party the juvenile hosted in Boyles' back yard sometime between August and December of 2017. Boyles averred that the juvenile detailed how he and Ricky had recorded beating and killing a man, but that Burke was "going down" for the murder. According to Boyles, the juvenile was going to show her the video, "but his friends yelled for him to come

8

outside." She concluded, "I know he told me the truth because he never came around after he confessed to the murder. He completely avoided being around me."

{¶24} Donna Cottrill averred that her sister was dating Shawn Marx at the time of the robbery at Pizza Joe's. Marx testified at trial and identified Burke as the person he saw fleeing the restaurant following the robbery. According to Cottrill, Marx and her sister were using and selling crystal methamphetamine at the time of the event, and Marx was high when he testified. Attached to her affidavit are unsworn copies of two criminal court dockets for a "Shawn M. Marx," both of which were filed after the time of the robbery and the trial.

{¶25} Lisa Cope averred that on June 12, 2017, the day Brandon was reported missing, she had a conversation with Mary Roupe ("Mary"). Mary's mother, Pamela Roupe ("Pamela"), owns the home at which Brandon was last seen alive by certain witnesses at trial, including Pamela's grandson Ricky Roupe. According to Cope, Mary told her that Pamela was "flipping out" because, as Pamela had told Mary, "these kids here were all fighting, Mary, I believe they killed someone, what should I do?" Cope averred that she asked Mary all of the kids' names. According to Cope, Mary listed off six names that did not include Burke: "Ricky Roupe, Brandon Sample, [the juvenile from the sealed records], Josh White, and Mary Roupe's two nieces[.]" Cope averred that she asked Mary where the dead body was, and "Mary said her mother, Pam, told her, 'They went on a car ride.'"

{¶26} Lori White averred that on July 1, 2018, she was involved in a group discussion on Facebook on the topic of "the innocence of Austin T. Burke" and received a message request from Brandon's sister, whom White did not know. White's affidavit

9

refers to disagreements between herself and Brandon's sister regarding Burke's innocence, whether Burke was a member of a gang, and whether Josh White was an addict and lied to the detectives about his and Brandon's drug use. Attached to White's affidavit are portions of the conversation printed from Facebook messenger.

{¶27} Gage Sell ("Gage"), Burke's younger brother, provided two affidavits. The first affidavit pertains to the night of June 11, 2017, in which he states that "Austin was home before I went to bed, and was home early in the morning when I woke up." Gage averred that he had told the detective the specifics of witnessing Burke getting dropped off at home by two individuals in a white Chevy Malibu (which is the type of car Brandon drove) and that he had offered to testify at trial. He further averred that Josh White lied on the stand when he testified that he never saw or met Burke and that he and Brandon never picked up Burke or drove him home.

{¶28} In Gage's second affidavit, he testified that on the last day of trial he recognized one of the jurors as his driving instructor, and that she had lied about knowing the family or any facts of the case in order to be on Burke's jury and possibly influence the other jurors. According to Gage, they had four driving sessions together, and she had picked him up at his house each time. Gage averred they spoke of the case in great detail and that the instructor was aware of his connection with Burke. Attached to this affidavit are Gage's driving school records, which indicate that three of the sessions took place prior to the crimes, on June 1, 2, and 8, 2017. The final session took place two months after, on August 18, 2017.

{¶29} Jamie Sell ("Sell"), Burke's mother, executed five affidavits. Much of the information to which she avers is repeated in more than one affidavit.

{¶30} Sell first testified to performing a search on a phone number that was last called from Brandon's cell phone at 2:14 and 2:15 a.m. on June 12, 2017, and discovering that it belongs to a local heroin dealer with an address on the "east side of Warren." The name of this dealer appears in the detective's report, according to Sell, although the detective testified that he had not looked into that particular phone number. Sell averred that this information corroborates Burke's statements to police as to Brandon's drug use and intention to go to the "east side of Warren" to get drugs on June 11, 2017. Attached to this affidavit are documents related to Sell's online search, unverified criminal records of the heroin dealer, a page from the detective's report, and fourteen pages of Brandon's cell phone logs.

{¶31} Sell next testified that, in examining Brandon's text message log after the trial was over, she realized there were 19 text messages concealed by the prosecution. According to Sell, if you compare Brandon's text log with Burke's cell phone extraction report, there are messages missing. Both documents are attached to this affidavit.

{¶32} Next, Sell averred that when Burke's property from the day of his arrest was returned to her after trial, she discovered a shoe string tied around his cargo shorts as a belt, which was the shoe string missing from the tennis shoes confiscated by police following the Pizza Joe's robbery. She claims that this means Burke would not have been able to run from the scene while wearing his tennis shoes. Sell further avers that the Pizza Joe's employees described the perpetrator as mixed race, whereas Burke has pale white skin. Attached to this affidavit are still shots from the video recording of the robbery, the statements made by witnesses to the robbery, and pictures of the property Sell retrieved from the jail.

{¶33} In the next affidavit, Sell averred to messages she exchanged with Donavon Bunner, who was one of the individuals with Burke around the time the robbery occurred and who had testified at trial. According to Sell, Bunner now has a criminal record and more accurately resembles the description of the robber that was given by Pizza Joe's employees. Sell averred that Bunner told her that Melanie Engle, another witness at trial, lied on the stand. Portions of these conversations were printed from Facebook and attached to the affidavit, as were unverified criminal records and allegations pertaining to Bunner. Also attached were text messages from Burke's extracted cell phone records in support of Sell's averment that other witnesses had lied on the stand about when they had met Burke.

{¶34} Finally, Sell averred that a photo of a 9mm gun provided in discovery was extracted from Burke's cell phone, which had been downloaded from a text message he received from Josh White. According to Sell, Josh White texted Burke a photo of the gun and asked if Burke wanted to purchase it. Sell makes further averments related to the position of Brandon's body at the time it was found, which, according to her, indicate he was in a sitting position when his body went into "rigamortis" [sic]. A photo of a 9mm gun is attached to the affidavit, as well as photos of Brandon's deceased body at the time of discovery.

{¶35} The trial court found inherent credibility issues pervade each of the affidavits attached to Burke's petition. First, the trial court found the affidavits are not proper evidence as they contain hearsay and are based on little to no personal knowledge of the affiants. Further, the trial court determined the affidavits contain inherently false information based on the *in camera* review of the sealed juvenile

12

records requested from the Trumbull County Juvenile Detention Center. Specifically, the trial court found that these sealed records "conclusively and irrefutably dispute the allegations raised in the affidavits regarding the identity of the perpetrator in this case as being a person other than the Defendant."

{¶36} While a sworn affidavit should not lightly be deemed untrue, an evidentiary hearing was not required to determine that these particular affidavits lacked credibility due to lack of personal knowledge, inherent bias, reliance on hearsay, and/or objectively false statements. In addition, the judge who reviewed Burke's petition was the same judge who presided over his trial and sentencing hearing. Therefore, because the judge was familiar with the underlying proceedings, the trial witnesses, and the other evidence presented to the jury, the judge was also in the best position to assess the credibility of the affidavits that attempt to undermine the authenticity and reliability of that evidence as well as the credibility of trial witnesses. *See Calhoun, supra*, at 286.

{¶37} We conclude that the trial court properly weighed the credibility of these affidavits and did not abuse its discretion in finding they lacked credibility.

### SUBSTANTIVE GROUNDS FOR RELIEF

#### Witness Credibility

{¶38} In his petition, Burke makes a vague claim that his constitutional rights under the Sixth Amendment's Confrontation Clause were violated because the state's trial witnesses lacked credibility. We agree with the trial court that any challenges to the state's witnesses should have been made in the trial of this matter or on direct appeal, and not raised as a collateral attack to Burke's conviction. Burke did, in fact, challenge the credibility of the state's witnesses in his manifest weight argument on direct appeal,

13

an argument this court determined lacked merit. *Burke, supra*, at ¶137. Thus, any argument pertaining to witness credibility is barred by res judicata. *See Perry, supra*, at paragraph eight & nine of the syllabus ("Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.").

Ineffective Assistance of Trial Counsel

{¶39} "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *Jackson, supra*, at syllabus; *Calhoun, supra*, at 283. "Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing." *Jackson, supra*, at 111 (citation omitted).

{¶40} Burke has made only a broad assertion that his trial counsel was ineffective, offering no specific instances of this alleged ineffectiveness, and has submitted no evidentiary documents supporting such a claim. Accordingly, a hearing was not warranted on this claim.

14

## Juror Misconduct

{¶41} Burke alleges an instance of juror misconduct in that one of the jurors was his younger brother Gage's driving instructor. Gage did not testify at trial. Because Gage's affidavit was found to lack credibility, there is no evidence to support that this juror was ever aware Gage and Burke are brothers, as they do not share a surname, or that this juror discussed Burke's case with Gage during the one driving lesson that took place two months after Burke's arrest. Nothing in the notes from Gage's driving lessons indicate the juror held any animosity or ill will toward Gage or his family; they were, in fact, complementary of Gage. Further, during voir dire the juror disclosed that she was a driving instructor at the Ohio State Driving Academy and that she knew juveniles who had been familiar with the victim. Defense counsel did not raise a challenge to her seat on the jury. Burke has provided no evidence to support his allegation that this juror lied under oath in order to be seated on the jury and influence the other jurors against him. Accordingly, a hearing was also not warranted on this claim.

## Discovery Violation

{¶42} Finally, Burke claims the prosecutor committed a discovery violation by withholding certain cell phone records. The state provided summary judgment evidence that all available and extracted cell phone records in possession of the prosecutor were turned over to the defense prior to trial.

{¶43} In one of Sell's affidavits, she notes that the phone billing records from Brandon's phone were handed over to detectives by Brandon's father. Detective Greaver testified at trial that Brandon's cell phone records had been requested from the wireless carrier, but they were never received. Thus, the prosecutor was never in

15

receipt or possession of these documents and could not have provided them to the defense.

{¶44} Sell also avers that, after comparing Brandon's phone billing records with Burke's extraction report, she discovered the prosecution failed to disclose 19 text messages exchanged between the two.

{¶45} In an affidavit provided by the state, Assistant Prosecutor Christopher D. Becker averred that he provided two flash drives to defense counsel on January 4, 2018, as part of the State's Sixth Supplemental Answer to Request for Discovery. These flash drives contained the extraction on Burke's cell phone that was performed by the state's expert witness, JoAnn Gibbs of BCI. Becker further averred that State's Exhibit 47 submitted at trial was a printout of time-specific text messages from this extraction. Four text messages from the extraction report were not included in the exhibit because they were outside of a certain time frame. However, he averred, because all the messages were contained in the extraction report, defense counsel could have introduced them at trial.

{¶46} JoAnn Gibbs of BCI also provided an affidavit, explaining that certain records were unable to be extracted from Burke's cell phone. Specifically, a total of 15 messages between Brandon and Burke that were listed on Brandon's phone billing records between 12:19 a.m. and 1:18 a.m. on June 12, 2017, were not included on Burke's extraction report. Gibbs averred, consistent with her trial testimony, as follows:

> The reason those text messages were not able to be extracted from the defendant's phone is because the data is not there on the phone. The most likely explanation for this is that the text messages were deleted from the phone and then were written over. This process is called Wear Leveling. Wear Leveling is an automated process used to evenly wear out the chip in the phone.

16

> Upon deletion and depending on the status of the block on which the data is written, the device will move data around and wipe blocks of deleted data, ensuring an even wear of the chip. It is not uncommon to be unable to recover blocks of deleted data.

{¶47} The fact that Brandon's cell phone records were never received from the wireless carrier and the fact that deleted text messages were unable to be extracted from Burke's phone were both raised at trial, and defense counsel had an opportunity to cross-examine both witnesses.

{¶48} Burke has failed to raise any claim as to a discovery violation that would rise to the level of a constitutional violation and has not shown that he is entitled to a hearing on this issue.

## CONCLUSION

{¶49} Burke's sole assignment of error is without merit. The trial court did not abuse its discretion in weighing the credibility of the affidavits or in determining there were insufficient grounds for relief to warrant a hearing. Even if the information contained in the affidavits was truthful and not tainted by bias or hearsay, the affidavit testimony does not rise to the level of demonstrating a violation or infringement of Burke's constitutional rights.

{¶50} The judgment of the Trumbull County Court of Common Pleas, granting summary judgment in favor of the state of Ohio on Burke's Petition for Postconviction Relief, is hereby affirmed.

MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.

17