[Cite as *State v. Parks*, 2021-Ohio-2883.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| STATE OF OHIO, | CASE NO. 2021-L-021 |
|---|---|
| Plaintiff-Appellee, | |
| - v - | Civil Appeal from the Court of Common Pleas |
| JABROWN R. PARKS, | |
| Defendant-Appellant. | Trial Court No. 2018 CR 000757 |

## O P I N I O N

Decided: August 23, 2021
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Kristi L. Winner*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Jabrown R. Parks*, pro se, PID# A763-919, Lake Erie Correctional Institution, 501 Thompson Road, P.O. Box 8000, Conneaut, OH 44030 (Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Parks appeals the judgment dismissing his motion for postconviction relief. We affirm.

{¶2} On July 2, 2018, a man wearing a visored helmet and carrying a gasoline can robbed a bank in Willoughby. Thereafter, officers learned that the man was suspected to have fled in a white Lexus. Officers engaged in a high-speed chase of the Lexus but ultimately lost sight of the car, which was registered to Parks' brother. Willoughby officers in unmarked vehicles surveilled Parks' brother's address on East

162nd Street in Cleveland, and Cleveland officers assisted by maintaining a marked unit in the area. During their surveillance, officers were informed that the Lexus had been found set ablaze. Thereafter, a vehicle entered the driveway of the East 162nd Street residence, and Willoughby officers stopped the car with their weapons drawn. Parks exited from the passenger side of the vehicle, at which point a Willoughby officer, Detective Burrington, maintained that Parks apologized to his brother's girlfriend, Ciara, who was driving the car, for getting her involved. The officer maintained that Parks then began telling Ciara to apologize to several other specific people. The officer further maintained that Parks told Ciara to tell officers that she picked him up from the rec center.

{¶3} After further investigation, Parks was indicted on seven charges related to the bank robbery. Parks moved to suppress evidence resulting from his detention on the day of the robbery, including his purported statements to Ciara. During the suppression hearing, Detective Burrington testified as to the events set forth above. Relevant to the present proceedings, the officer further testified that the unmarked Willoughby police vehicles that were used in detaining Parks did not contain video recording devices. Further, Detective Burrington noted that he was not aware of the Cleveland Police Department's policy regarding recording devices in that department's marked cars, and he was informed that no recording of Parks' detention at the East 162nd Street residence existed. Ultimately, the court denied the suppression motion.

{¶4} The case proceeded to jury trial. The jury found Parks guilty on all counts, and the court sentenced him to an aggregate of 22 years in prison. Parks appealed, and this court affirmed. *State v. Parks*, 11th Dist. Lake No. 2019-L-097, 2020-Ohio-4524.

2

Case No. 2021-L-021

{¶5} On December 23, 2020, Parks petitioned the trial court for postconviction relief. In his petition and supporting affidavit, Parks argued that the state withheld evidence by failing to turn over recordings from the Cleveland marked unit that responded to East 162nd Street. Parks maintained that "[t]he contents of the undisclosed records are material and offer independent evidence that suggests that Parks never screamed: 'I'm sorry, I'm sorry for getting everyone involved.'" Parks also maintained that he was denied effective assistance of counsel because defense counsel (1) failed to advise him of his right to testify at the suppression hearing, (2) failed to counter the state's evidence that he apologized on the date of his detention, (3) failed to argue that Parks was *not* placed under arrest on the date of the detention, (4) advised him that she was not able to relitigate the suppression issue, (5) concentrated more on Parks reaching a plea agreement than preserving his rights, (6) failed to review the jury instructions, and (7) failed to discuss the registration aspect of the arson charge with him. The trial court denied the motion without hearing.

{¶6} On appeal, Parks assigns the following three errors:

{¶7} "[1.] The trial court erred in denying the petition without a hearing where the petition and attached evidentiary materials clearly made out a prima facie cause of a constitutional violation."

{¶8} "[2.] The trial court erred in denying appellant a hearing on his petition, depriving appellant of liberties secured by the U.S. Const. Amend XIV, and Ohio Const. Art. I, Sections 1, 2, 10 and 16, including meaningful access to the courts of this state."

{¶9} "[3.] The trial court erred when it applied the doctrine of res judicata to appellant's claims of ineffective assistance of counsel where the evidence in support of

3

the claims were affidavits attached to the petition which contained sufficient operative facts demonstrating counsel's prejudicial performance and is evidence dehors the record."

{¶10} We generally apply an abuse of discretion standard to our review of a trial court's decision to dismiss a petition for postconviction relief without a hearing. *State v. Jackson*, 11th Dist. Lake No. 2019-L-042, 2019-Ohio-4735, ¶ 11. "However, if a trial court denies a petition on legal grounds, e.g., by application of the doctrine of res judicata, this court's review is de novo." *State v. Davies,* 11th Dist. Ashtabula No. 2017-A-0013, 2017-Ohio-7961, ¶ 12, citing *State v. Butcher*, 11th Dist. Portage No. 2013-P-0090, 2014-Ohio-4302, ¶ 6.

{¶11} The postconviction relief statute, R.C. 2953.21, provides, "Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States," may file a postconviction petition "asking the court to vacate or set aside the judgment or sentence * * *." R.C. 2953.21(A)(1)(a)(i). Pursuant to R.C. 2953.21(D), "[t]he petitioner bears the burden to show via affidavits, the record, and other supporting materials that sufficient operative facts exist which, if true, would establish substantive grounds for postconviction relief." (Citations omitted.) *State v. Hull*, 11th Dist. Lake No. 2019-L-126, 2020-Ohio-2895, ¶ 11.

{¶12} "'[A] criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing.'" *State v. Burke*, 11th Dist. Trumbull No. 2020-T-0013, 2020-Ohio-5474, ¶ 15, quoting *State v. Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905 (1999), citing *State v. Cole*, 2 Ohio St.3d 112,

4

443 N.E.2d 169 (1982). "'Before granting an evidentiary hearing on the petition, the trial court shall determine whether there are substantive grounds for relief[.]'" (Emphasis deleted.) *Burke* at ¶ 15, quoting *Calhoun* at 282-283.

{¶13} Here, in his first two assigned errors, Parks argues a hearing was warranted on his petition because he sufficiently demonstrated a constitutional violation resulting from the withholding of the Cleveland Police Department recording of his detention at East 162nd Street, which could have been used for impeachment purposes.

{¶14} Of significant note, Parks alleges in his petition that the recording of his detention was missing, destroyed, and withheld, implicitly *assuming* that a recording was made of his detention. However, as the trial court recognized, Parks does not allege any operative facts establishing that any such recording ever actually existed. Further, to the extent a potential recording should have been disclosed, the trial court concluded that Parks' claim was barred by res judicata.

{¶15} Under the doctrine of res judicata, "'a defendant who was represented by counsel is barred from raising an issue in a petition for postconviction relief if the defendant raised or could have raised the issue at trial or on direct appeal.'" *Jackson*, 2019-Ohio-4735, at ¶ 15, quoting *State v. Adams*, 11th Dist. Trumbull No. 2003-T-0064, 2005-Ohio-348, ¶ 38, citing *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus. Where the claims raised in a petition for postconviction relief are barred by res judicata, the trial court need not hold a hearing prior to dismissing the petition. *State v. Gaines*, 11th Dist. Trumbull No. 2018-T-0075, 2019-Ohio-2097, ¶ 26.

{¶16} As set forth above, Parks provided no basis in his petition for concluding that a recording of his detention was ever made. Any recording was the specific subject

5

of a pretrial discovery request; the disclosure of any such recording was ordered by the trial court; the lack of a recording was discussed at the suppression hearing; and the defense issued a subpoena duces tecum requesting the recording. Therefore, the lack of a recording was apparent from the record. The trial court did not err in determining that any constitutional challenge to the failure to disclose a recording could have been raised prior to trial and is now barred by res judicata. Although we do not foreclose the possibility of a different outcome in a case where the defendant alleges that a recording was discovered after conviction, this is not such a case.

{¶17} On appeal, Parks does not address the trial court's determination that his arguments regarding the state's alleged failure to produce exculpatory evidence is barred by res judicata. Perhaps to avoid the application of res judicata, Parks asserts that, after his appeal, he learned of a "model policy" published in 2005 by the International Association of Chiefs of Police with respect to such recordings. Parks places great weight on his argument that this policy has some authoritative value, and he has attached the policy to his appellate brief. Parks appears to contend that a recording of his detention must have been made pursuant to the provisions of the model policy and a news report from 2016 indicating that funds had been allocated to the Cleveland Police Department to outfit their cruisers with dash cams.

{¶18} Parks' argument is speculative and relies on materials that, based upon their publication dates, would have been available at the time of trial. *See Davies*, 2017-Ohio-7961, at ¶ 15 (to avoid res judicata, the materials on which the petitioner relies *must not have existed or been available* at the time of trial). Moreover, Parks did not present this argument or these materials to the trial court in his petition, and they cannot now be

6

used to demonstrate error on appeal. *See Estate of Oliver v. Dewey*, 144 Ohio App.3d 377, 383, 760 N.E.2d 428 (11th Dist.2000) ("It is well settled in Ohio that issues not initially presented in the trial court may not be raised for the first time on appeal."). The "model policy" and newspaper report attached to Parks' brief are impermissible appendices, which we will not consider. *See* Loc.R. 16(B)(1) ("With the exception of those items enumerated in Ohio App.R. 16(E) and Loc.R. 16(B)(3), appendices to the brief shall not be employed."). *See also* App.R. 16(E) and Loc.R. 16(B)(3) (permitting a hard copy of a case that is not available in electronic format to be attached to the brief that cites it).

{¶19} Based on the foregoing, Parks has not demonstrated that the trial court abused its discretion in dismissing his petition without a hearing insofar as he claimed a constitutional violation through the withholding of evidentiary material. Accordingly, Parks' first and second assigned errors lack merit.

{¶20} With respect to his third assigned error, Parks maintains that the trial court erred in concluding that his claims of ineffective assistance of counsel were barred by res judicata. Parks' argument is misplaced, as the trial court did not apply res judicata to these claims. Instead, the trial court concluded that Parks claims were insufficient to demonstrate the two prongs of the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶21} To demonstrate ineffective assistance of counsel,

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

7

*Calhoun*, 86 Ohio St.3d at 289, quoting *Strickland* at 687.

{¶22} Before the trial court grants a hearing on a postconviction petition claiming ineffective assistance of counsel, "'the petitioner bears the initial burden to submit evidentiary documents containing *sufficient operative facts* to demonstrate the lack of competent counsel *and* that the *defense was prejudiced* by counsel's ineffectiveness.'" (Emphasis sic.) *Calhoun* at 283, quoting *State v. Jackson*, 64 Ohio St.2d 107, 112, 413 N.E.2d 819 (1980), syllabus. With respect to the prejudice prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "If a claim can be disposed of by showing a lack of sufficient prejudice, there is no need to consider the first prong, i.e., whether trial counsel's performance was deficient." *State v. Moore*, 11th Dist. Geauga No. 2011-G-3027, 2012-Ohio-3885, ¶ 69, citing *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 695-696.

{¶23} Aside from his misplaced res judicata arguments, on appeal Parks focuses on defense counsel's failure to impeach witness testimony at the suppression hearing with a police report indicating that he was placed in the back of a marked Cleveland police cruiser after he exited the car driven by Ciara. To the extent that Parks' petition could be read as raising this argument, it is not clear how this evidence could have been used for impeachment purposes. Detective Burrington testified at the suppression hearing that Parks was placed in a Cleveland police car when he was detained at East 162nd Street. Another Willoughby officer, Detective Krejsa, testified that, when he arrived at the

8

residence, the Cleveland police were already there, and Parks was seated in the back of an unmarked Willoughby police car. This testimony is not inconsistent with Parks having also been placed at some point in the Cleveland police car.

{¶24} Parks next maintains that counsel did not notify him of his right to testify at the suppression hearing, and the materials attached to his petition indicate that he wanted to explain his version of events at the hearing. To the extent that Parks is arguing that he would have testified that he never apologized to Ciara or asked her to apologize to anyone else, Parks does not argue how this testimony, although contrary to that of the officers, establishes prejudice. Even if Parks had testified that he never said what was claimed, this does not demonstrate that the claimed statements were made during an unmirandized custodial interrogation subjecting them to suppression. *See State v. Starkey*, 2012-Ohio-6219, 985 N.E.2d 295, ¶ 25 (11th Dist.) (absent a constitutional violation, suppression of evidence is not an appropriate remedy). Moreover, assuming that the trial court were to find Parks credible, we recognized in Parks' direct appeal that the permissibility of the continued detention of Parks was not based on his apologetic statements alone:

> According to Burrington, [Parks], while exiting the car, made incriminating statements, by telling Ciara that he was sorry. Burrington testified that [Parks] also directed Ciara to tell the police that she had just picked him up from the rec center. Burrington perceived this as an attempt by [Parks] to establish an alibi. Further, Burrington said that [Parks] fit the physical description of the suspect as a thin male who was approximately six feet tall and that during his initial detention, the police also learned that [Parks] was on federal probation for bank robbery.

*Parks*, 2020-Ohio-4524, at ¶ 35.

9

Case No. 2021-L-021

{¶25} Based upon the foregoing, the trial court did not abuse its discretion in concluding that Parks failed to set forth sufficient facts as to the second prong of *Strickland* to warrant a hearing on his petition.

{¶26} Last, on appeal, Parks briefly argues that his attorney was ineffective for failing to file a notice of alibi and failing to present expert testimony. These arguments do not appear to have been raised in Parks' petition, and we will not address them. *See Estate of Oliver*, 144 Ohio App.3d at 383. Accordingly, Parks' third assigned error lacks merit.

{¶27} The judgment is affirmed.


MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

Case No. 2021-L-021